In the Matter of the Application of THE GEORGE ADAMS LUMBER Co., INC., Petitioner, for an Order of Certiorari Directing the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK (Department of Public Service, State Division), Respondent, to Certify and Return All Proceedings of Said Public Service Commission, etc., under Section 27 of the Public Service Commission Law against the LONG ISLAND RAILROAD COMPANY, ETC., Respondent. (Case No. 4370.)

In the Matter of the Application of Cox & VAN TUYL, INC., Petitioner, for an Order of Certiorari Directing THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK (Department of Public Service, State Division), Respondent, to Certify and Return All Proceedings of Said Public Service Commission, etc., under Section 27 of the Public Service Commission Law against the LONG ISLAND RAILROAD COMPANY, ETC., Respondent. (Case No. 4371).

In the Matter of the Application of NASSAU LUMBER COMPANY, Petitioner, for an Order of Certiorari Directing the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK (Department of Public Service, State Division), Respondent, to Certify and Return All Proceedings of Said Public Service Commission, etc., under Section 27 of the Public Service Commission Law against the LONG ISLAND RAILROAD COMPANY, ETC., Respondent. (Case No. 4372.)

Third Department, June 27, 1930.

Davies, Auerbach & Corneli [*Martin A. Schenck* and *H. C. McCollom* of counsel], for the petitioners.

*Charles G. Blakeslee* [*Harry Myron Chamberlain* of counsel], for the Public Service Commission.

*Joseph F. Keany* [*Louis J. Carruthers* of counsel], for the respondent.

HILL, J.   The petitioners operate manufacturing plants adjacent to the Long Island railroad and are served by side tracks.   The railroad is electrifying its line.   The industries have petitioned the Public Service Commission to determine as to the necessity of electrification of the side tracks, which the railroad demands, and if found necessary, to require the railroad to pay the expense. Contracts containing the following provision concerning the maintenance and operation of these side tracks have been signed by the parties: " The industry agrees that the railroad company shall relocate, readjust or add to said side tracks and switch connection if and when the same is made necessary by the opening or change in the line, grade or use of any public street or highway across, along or in the vicinity thereof, or by any change in the grade, location or use of the tracks or other structures of the railroad company at or about the point of connection, and to repay to the railroad company the actual cost of such relocation, readjustment or additions plus 15 per cent for organization, accounting and use of hand-tools.   *   *   * "

Section 27, subdivision 3, of the Public Service Commission Law provides in part: " Whenever the shipper and the carrier shall be unable to agree as to the terms of agreements respecting such switches or side-tracks,   *   *   *   the same shall be subject to the approval of the Commission." The counsel for the railroad construes this provision to apply to the making of contracts only, and says that if, prior to the execution of the agreement with the petitioners, the parties had been unable to agree, the Public Service Commission could have acted, with power to determine what terms

should be written into the contract, but the parties having agreed, the construction and enforcement of the terms of the contract is for a law court of competent jurisdiction. The Commission has adopted this view.

The Public Service Commission Law ■ " was enacted in response to a pronounced and insistent public opinion and was a radical and important modification of the relations and policy of the people toward the corporations which are its subjects. Its paramount purpose was to protect and enforce the rights of the public. * * * It provided for a regulation and control which were intended to prevent, on the one hand, the evils of an unrestricted right of competition and, on the other hand, the abuses of monoply." (*People ex rel. New York Edison Co.* v. *Willcox*, 207 N. Y. 86, 93.)

The State, in the exercise of police power, protects the railroads from ruinous competition. The Legislature has empowered the Public Service Commission to determine under what circumstances competing lines may be built. Within a reasonable field, the operation of a railroad is a legalized monoply. This requires supervision of rates, charges and contracts with the people who must receive service from the monoply. The Legislature, by the Public Service Commission Law, has transferred its rate-making power to the Commission, together with many other powers of supervision over the dealings between railroads and the public. These powers may be delegated by the Legislature. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123.) The construction of side tracks and the terms of the agreements as to their use is governed by subdivision 3 of section 27 and by section 50 of the act. The intent of the Legislature to grant plenary powers to the Commission over the installation and use of side tracks is shown by the language used in the statute: " *Whenever* the shipper and the carrier shall be unable to agree as to the terms of agreements respecting such switches or side-tracks, * * * the same shall be subject to the approval of the Commission." This language should be read with the general policy of supervision in mind. Likewise, with regard to the evil it sought to eliminate. If it had been intended to limit the time when the Commission might exercise its power, the language used would have indicated such intention. Even if the power had not been so specifically granted, the determination as to which party should make this capital expenditure is so identified with rate making that supervision by the Commission would have been implied. The use of the side track over which cars are drawn is an element in the conveyance of freight from its

origin to destination. A railroad is entitled to a reasonable return on the fair value of its property used in the public service. Obviously, it would not be entitled to a return upon the investment if the industry built the side track.

The construction by a law court of the exact meaning of this contract would be without effect, for the business dealings between the railroads and public have been said to be " no longer an affair of predominantly private interest, in which the State would interfere without system and with spasmodic and intermittent action. A superintending agency of government had taken the matter in hand. The question soon arose whether the new rule was retroactive, and annulled existing contracts in conflict with its terms. Indisputably it annulled such contracts between carriers and passengers, or carriers and shippers. [*Louisville & Nashville R. R.* v. *Mottley*, 219 U. S. 467; *People ex rel. N. Y. Steam Co.* v. *Straus*, 186 App. Div. 787; 226 N. Y. 704; *Postal Tel.-Cable Co.* v. *Associated Press*, 228 id. 370; *Producers Transp. Co.* v. *R. R. Comm.*, 251 U. S. 228.] " (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 359.)

Were the parties to obtain a construction of this contract and a judgment from a law court, that would not terminate the controversy, as determination of this and kindred matters has been intrusted to the Public Service Commission. It should determine the rights here involved, and the parties " cannot remove them from the power of the State by making a contract about them." (*Hudson Water Co.* v. *McCarter*, 209 U. S. 349, 357.)

The Commission has power to determine the rights of the industries, and the railroad, and to decide which party shall pay the expense of electrification, if it be made, and as an incident, if necessary, to construe the contract between the parties.

The decision of the Public Service Commission should be annulled, and the matter remitted to the Commission, with fifty dollars costs and disbursements.

VAN KIRK, P. J., DAVIS and WHITMYER, JJ., concur; HINMAN, J., concurs with a separate opinion.

HINMAN, J. (concurring in part). This court is holding that the Commission has the power to construe the contract between the industry and the railroad, whether it covers the subject-matter in dispute or not and to enforce it or abrogate it accordingly as the contract as so interpreted does or does not meet with its approval. I do not interpret the Public Service Commission Law as conferring any such broad power. It cannot, by requiring its approval

of an existing contract, abrogate it and require the making of a new one, nor has it the equitable powers to interpret its provisions and enforce them according to its interpretation, if in fact there is an outstanding contract which covers the subject-matter in dispute. Its jurisdiction is confined to the making of a contract where the minds of the parties have not met on the subject involved and they cannot agree as to what its terms should be.

The railroad claims that the parties have agreed as to who should pay electrification cost and the petitioners construe the contract as not covering the subject at all because the minds of the parties never met on that subject. There is a difference between a case where, on the one hand, there are terms in a contract which are applicable to the subject-matter in dispute but which terms require interpretation and a case where, on the other hand, there is a total failure of coverage of the subject-matter in any of the terms of the contract. In the first case mentioned the parties would be relegated to the courts for interpretation of the contract provision and the enforcement of the respective rights and liabilities of the parties thereunder. In the second case mentioned a proper decision would reveal that the parties, not being bound by contract, would be required by the Commission to agree to terms of some kind and such terms must meet with the approval of the Commission.

The Commission always has jurisdiction to determine whether or not it has jurisdiction of the subject-matter. (*Matter of City of Long Beach* v. *P. S. Commission*, 249 N. Y. 480.) And so it must here decide whether there is any contract at all between the parties covering the electrification of side tracks to the industrial plant of petitioners. If it decides that question erroneously it can be corrected by the courts in a certiorari proceeding. The Commission has not made the distinction in its opinion and I construe its determination as a refusal to say whether the contract does or does not cover the subject-matter. I see no reason why this court should not now say whether it does or does not. (We can do what the Commission ought to have done.) If it does, that practically settles the whole controversy in this case. If it does not, the Commission has jurisdiction and can proceed accordingly.

I cannot see how there can be any doubt as to the fair interpretation of the present contract. It does not mention electrification, a subject which has required attention due to the passage of a statute since the making of the contract. And the general language of the clause relied upon by the railroad in this standard

form, which it has required all industries to sign, does not by any fair intendment relate to the subject-matter of electrification. There is no reason to believe that the parties had any such subject in mind at the time of the execution and the language used is not appropriate to indicate such an intention. And doubt, if any, must be resolved against the party which drafted the form. The clause in question applies only when the railroad " shall relocate, readjust or add to said side tracks." That is not the full condition, however. Such addition to side tracks must be made " necessary " by (1) the opening or change in the line, grade or use of any public street or highway across, along or in the vicinity thereof or (2) by any change in the grade, location or *use* of the tracks or other structures of the railroad company *at or about the point of connection*. It is claimed that electrification requires the addition of a third rail and, therefore, there is an addition to the side tracks and that this is necessitated by a change in the " use " of the tracks " at or about the point of connection." I think the agreement meant " add to side tracks *by the addition of more side tracks*." And it seems clear to me that there is no change in the *use* of the old tracks. There has been no shifting of the " use " of the tracks for a purpose not originally intended. The old tracks are used for the same purpose. The new third rail is not necessitated by any change in use of the old tracks. They are to carry the same traffic. The only change is in motive power, a thing unrelated to the old tracks themselves or their use except that an electric engine is to be driven over them instead of a steam engine. I cannot believe that any such exchange of engines constitutes a change in use of the old tracks within the fair meaning of the contract. There is no claim that heavier rails or any different roadbed is necessitated. The use is substantially identical. If I am wrong about that I think we should hold that the contract does cover the subject and that the Commission has no jurisdiction. To send it back to the Commission to construe it will merely postpone the construction of it by this court because any determination by the Commission would be reviewed here. If I am right in my construction, aided by the rule of construction that any uncertainty or ambiguity must be resolved against the party who prepared the agreement (*Gillet* v. *Bank of America*, 160 N. Y. 549), then the determination should be annulled and the matter remitted to the Commission with instruction that the contract has no application to the subject-matter, and that the Commission has jurisdiction and the duty to proceed accordingly.

Determinations annulled, with fifty dollars costs and disbursements in one proceeding, and matters remitted to the Public Service Commission.