*640 OPINION OF THE COURT
Phillip R. Rumsey, J.
Plaintiff is an accredited brain injury rehabilitation facility that has provided treatment to Charles O’Neill on a daily basis, since shortly after Mr. O’Neill suffered a head injury in the course of his employment with Challenge Industries, Inc. Defendant, which has apparently acted in much the same capacity as a provider of workers’ compensation insurance, identifies itself as “the third-party administrator of the Workers’ Compensation Trust of which Challenge Industries was a member” (affidavit of Stephen T. Helmer, Esq., Dec. 13, 2001, 7). Plaintiff seeks to recover from defendant amounts allegedly owed for the treatment provided to O’Neill from March 1, 2000, when defendant ceased paying the bills tendered by plaintiff, to the present.
Defendant moves for summary judgment dismissing the complaint, on the ground that plaintiff’s sole remedy in this situation is to submit its claims to arbitration, as provided by section 13-g of the Workers’ Compensation Law. Plaintiff disagrees, arguing, inter alia, that its right to payment arises not from the provisions of the Workers’ Compensation Law, but from an independent and binding contract entered into between the parties, whereby the defendant expressly agreed to pay for the services rendered to O’Neill at a rate of $235 per day. Plaintiff cross-moves for summary judgment on its cause of action for breach of that contract.
The Workers’ Compensation Law provides a specific and detailed procedure by which a medical practitioner may seek payment of his or her bills for treatment of a compensation recipient. To this end, the statute provides that after a bill has been rendered by the provider, the employer must either pay the bill, or notify the provider in writing as to the reason for its rejection. (This notification may be made by filing a “C-7” or “C-8.1” form, and sending a copy of the form to the provider, or by sending the provider a written notice indicating, “in detail,” the reasons for nonpayment [see, 12 NYCRR 325-1.24 (c) (1) (ii), (iii)].)
If such a written objection is made to the bill within the 45-day period, and the parties cannot thereafter agree upon the value of the medical services at issue, the matter “shall be decided by arbitration if requested by the [provider]” (Workers’ Compensation Law § 13-g [1]). If no objection is registered in a timely manner, but the bill remains unpaid, the provider “may *641 notify the chair in writing * * * and request that the board make an award for payment of such bill” (id.).
Plaintiff contends, however, that because it allegedly entered into an independent, contractual arrangement with defendant, whereby defendant agreed to pay for plaintiffs services at an agreed upon rate, it is not limited to the remedies provided by the statute, but may instead seek recovery in a common-law action for breach of that contract. To this end, plaintiff argues that the exclusivity provisions of the Workers’ Compensation Law (see, Workers’ Compensation Law § 11) do not preclude such an action, because the “injury” for which redress is sought arises from the parties’ contractual relationship, not out of or in the course of the original employment relationship between the claimant and his or her employer.
Existing case law in the area of workers’ compensation is of limited value in resolving this issue, because many of the cases addressing,a medical provider’s right to sue have been decided under prior versions of the statute, which differed from the present law in significant respects. For example, cases decided prior to 1935, holding that a physician was entitled to bring a common-law action for his or her fees in a workers’ compensation case, arose under a statute that provided for medical care and treatment of injured employees to be furnished by the employer, but gave the governing board no jurisdiction to make an award for such services except in two narrow circumstances (see, Szold v Outlet Embroidery Supply Co., 159 Misc 911, 913, affd 248 App Div 865, affd 274 NY 271, appeal dismissed 303 US 623). The employer was essentially given unfettered discretion to select and retain a physician to provide the requisite care, and only if it failed to do so was an administrative remedy available. Thus, without the right to bring a common-law action, a medical provider would have been without any remedy as against an employer that had arranged for the injured employee’s medical treatment, but then failed or refused to pay for the care provided (see, e.g., Weinreb v Harlem Bakery & Lunch Room, 204 App Div 293).
Even after the law was substantially changed in 1935, to provide, inter alia, that an injured employee may select his or her own medical providers, and to require that such providers be authorized by the Industrial Commissioner (now the Chair of the Workers’ Compensation Board) (see, Workers’ Compensation Law § 13-a), it was still widely believed that the Board had no authority to compel an employer to actually pay a medical bill in certain situations (see, Armstrong v Weiss, 168 Misc *642 653, 656). Consequently, if a treating physician were not permitted to seek payment in a civil action, he or she would still, in some instances, have been left without any means to recover from a recalcitrant employer (id.).
Under the present statutory and regulatory scheme, however, a medical provider has ample means of obtaining payment from an obligated employer or its insurance carrier, through the established administrative procedures. Whether or not the employer (or carrier) objects to the bill (on legal or other grounds) in a timely manner, the statute furnishes an administrative mechanism for obtaining review of the matter and payment of appropriate fees. If a timely objection is registered, the matter may be resolved by arbitration; if not, the provider may take his or her case to the Board, which is now expressly empowered to make an appropriate award. Therefore, older cases finding a common-law right of action on the ground that no other remedy existed are of limited precedential value in resolving the issue presently before the court.
Considered in its entirety, the present Workers’ Compensation Law evinces a strong legislative intention to create an integrated and complete administrative process for resolving all of the myriad issues that may arise in connection with workplace injuries, and to remove such issues from the courts. By establishing a means by which treating practitioners may obtain redress through the workers’ compensation system, when their bills remain unpaid, the Legislature has provided some indication of an intent to have those matters resolved, in the first instance, within the administrative system. Further support for that conclusion may be found in the legislative history, which reflects a process whereby the breadth of the administrative process has been increased over time, to provide remedies in situations where courts had found it necessary to exercise jurisdiction over legal claims brought by medical providers, due to the unavailability of administrative redress.
The existence of an administrative remedy, or oversight of the general subject area by an administrative agency, does not always preclude the maintenance of a legal action based on breach of a private contract (see, e.g., Bush Term. Bldgs. Co. v Bush Term. R.R. Co., 47 NYS2d 330, affd 267 App Div 991, lv denied 268 App Div 779; Warshak v Eastern Air Lines, 191 Misc 503). But if the laws establishing the administrative scheme are so comprehensive as to place substantive limitations upon the parties’ right to enter into the contract at issue, or upon the terms that may be included in a contract, this may *643 signal a legislative intention to regulate and provide governmental supervision of what would otherwise be a purely private contractual relationship (Matter of Adams Lbr. Co. v Long Is. R.R. Co., 230 App Div 260, 263). In that case, matters involving the interpretation or application of such agreements may fall within the province of the administrative agency, and the parties may not remove such issues, which have been deemed to be of public concern, “from the power of the State by making a contract about them” (id. [internal quotation marks omitted]).
This principle has been applied in the realm of workers’ compensation, where, for example, it has been held that an employer may not avoid the statutory mandate that nonemergency medical care for a compensation claimant be provided only by physicians specifically authorized by the Chair (Workers’ Compensation Law § 13-b), by entering into an independent contract obliging it to pay for the services of an unauthorized provider (Szold v Outlet Embroidery Supply Co., supra; cf., Reddy v Pegram, 169 Misc 841, 842). Although the court in Szold did not have to decide whether an authorized physician, having contracted with an employer, would otherwise have the right to pursue a legal action for his or her fees (see, id. at 919), it did hold that the statutes then in place legitimately restricted a physician’s right to contract for, and obtain, payment for services rendered to a compensation claimant, and that such restrictions must be applied to actions pursued in court as well as those before an administrative tribunal. Thus, it is clear that the Workers’ Compensation Law places substantive restrictions on the rights of employers and medical practitioners to enter into private contracts with respect to the furnishing of treatment for injured employees, and the relationships between employers, carriers, claimants, and medical personnel are subject to these statutory constraints, regardless of the existence of what would otherwise be a wholly private contract. This provides an additional basis for concluding that the Board should have primary jurisdiction over such matters.
Concededly, the Legislature has not explicitly divested the courts of jurisdiction over disputes arising between medical providers and those responsible for paying for their services to a compensation claimant, as it has with respect to the injured employee’s own claims against the employer (see, Workers’ Compensation Law § 11). Due consideration of the nature, purpose and extent of the existing statutory scheme, together with its history and relevant judicial precedent, does, however, compel a finding that this is an area in which the doctrine of *644 primary administrative jurisdiction applies, such that the courts should generally refrain from entertaining such matters, if they can be appropriately resolved in the administrative forum (see, 2 NY Jur 2d, Administrative Law §§ 322-323).
Moreover, in this instance, plaintiff has neither alleged, nor come forth with any evidence, that the parties agreed upon anything beyond merely the amount to be paid on a per diem basis. There was evidently no express written contract, and plaintiff makes no allegations as to any of the remaining terms of the purported agreement, including the precise nature of the services to be provided, the procedural mechanism for submitting bills and obtaining payment, the duration of the agreement, how or by whom it might be terminated, or whether future modifications in price or other particulars were contemplated. Thus, even assuming the truth of all of plaintiffs allegations, numerous factual questions, affecting plaintiffs right to recover the amounts at issue, remain. It would be appropriate, in this case, for the Board to consider plaintiffs proof as to the existence, and scope, of the purported agreement, as bearing on the issue of whether defendant has authorized, or “voluntarily” agreed to, payment of an amount that may be higher than would otherwise be awarded, as permitted by Workers’ Compensation Law § 13 (a). But it cannot be said that such an agreement is, without more, sufficient to reduce this dispute to one involving purely legal matters, beyond the scope of the Board’s broad jurisdiction. Accordingly, defendant’s motion shall be granted, and the complaint dismissed.
A few additional points, though not essential to resolution of the present motion, call for at least a brief comment. Plaintiff is correct in its assertion that it cannot be bound by the decisions rendered by the Workers’ Compensation Law Judge and the Board, after the hearing held on August 4, 2000, if it was not on notice of, nor afforded an opportunity to participate in, that hearing (see, Liss v Trans Auto Sys., 68 NY2d 15, 22). In any event, aside from general issues of causation and compen-sability of Mr. O’Neill’s injuries, and the objections set forth in the “C-8.1” forms filed by defendant between January 2000 and the hearing date — which, from the record before the court, appear to be limited to a claim that certain services provided during the months of March and May 2000 were “unreasonable and excessive” (see, affidavit of Doreen McClurkin, Feb. 4, 2002, exhibit B; C-8.1 forms May 30, 2000 and July 20, 2000) — no question relating to the value of plaintiffs services, or its right to payment therefor, was raised or resolved at that time. *645 Consequently, the prior proceedings do not preclude plaintiff from pursuing the relief outlined in section 13-g of the statute. And, while the regulatory time limitations for the interposition of a demand for arbitration, or a written request for a ruling by the Board, may have passed (see, 12 NYCRR 325-1.24 [d]), it would appear that the novelty of the situation, and the legal complexity of the issues raised herein, may provide sufficient basis for a finding of “good cause,” which would permit the Chair to excuse the delay (see, id., 325-1.24 [d] [3]).
Defendant’s motion is granted, and the complaint is dismissed.