BRUNOT, X
 

 The relator filed suit under the Employers’ Liability Acts of the state for compensation for alleged permanent disability caused by a fall from certain construction work while engaged in the service of his employer. The prayer of the petition is for a judgment for $13.50 per week, for 400 weeks, and for the additional sum of $250 for medical services.
 

 The suit was filed in the district court of Caddo parish. The answer denies all of the allegations of the petition, for lack of information. The case was tried, judgment wag rendered, a rehearing was granted, and, on rehearing, the court handed down the following decree:
 

 “This cause and action coming on for trial, the law and the evidence considered, for reasons orally assigned, it is hereby ordered, adjudged, and decreed: That there be judgment in favor of the plaintiff, Howard Coleman, in the sum of $8.78 per week, beginning the 5th day of January, 1927, for a period of 41 weeks, with legal interest on all weekly installments until paid, together with $60 medical fees, and all costs of this suit, reserving to the plaintiff the right to apply for a modification of this judgment, both as to the compensation and medical fees, within 6 months from date hereof.”
 

 “It is further ordered, adjudged, and decreed that the fees of the experts in this case, to wit, Drs. Thomas, Rigsby, Herold, and Schmidt, be and is hereby fixed in the sum of $25 each, to be assessed as costs in this proceeding.”
 

 The weekly wages paid to relator at the time of the accident was $13.50. The judgment he obtained awarded him $8.78 per week. Sixty-five per cent, of $13.50 is $8.78. Subsections (a) and (b) of section 8. 1. of Act- 85 of 1926 fix the compensation for temporary total and permanent total disability:
 

 “(a) For injury producing temporary total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond three hundred weeks.
 

 “(b) For injury producing permanent total disability to d'o work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks.”
 

 The weekly compensation is the same for temporary total and for permanent total disability. The only difference is that for temporary total disability weekly payments may be required for 300 weeks, while for permanent total disability the maximum period of time during which the payments shall be made is fixed at 400 weeks. '
 

 The petition which relator filed in the district court of Caddo parish does not allege that the injuries enumerated therein caused him to suffer either
 
 permanent total
 
 or
 
 temporary total
 
 disability. Articles 4 and 5 of the petition describe the nature of the injuries he received, but the only article of the petition which relates to the effect of those injuries upon his capacity to do work of any reasonable character is article 6, which is as follows:
 

 “He further shows that, subsequent to the accident complained of, he has been suffering from hemorrhages, which hemorrhages are caused by the injury to said lung, which condition your petitioner shows did not exist prior to the accident; further, that the said condition of the right lung is gradually growing worse, and that, by-reason of said condition, petitioner will be permanently disabled to do
 
 work of the na
 
 
 *141
 

 ture he is qualified to do.”
 
 (Italics by tbe court.)
 

 Tbe pleadings are not sufficiently specific, but the evidence establishes, with a fair degree of certainty, that plaintiff suffered temporary total disability to do work of any reasonable character as the result of the injuries he received while at work in the service of his employer. Under such circumstances, the court may, and it did, exercise the judicial discretion which is permitted by Act S3 ■ of 1926. The pertinent part of the act follows:
 

 “For injury producing temporary total or temporary partial disability, the court may in its discretion award compensation for a fixed number of weeks to be based upon the probable duration of such disability.” Act No. 85 of 1926, p. 121{ § S. 2. (K) 8.
 

 After rendition of the judgment quoted, supra, the weekly payments, both as to time of payments and amount to be paid, were regularly made for 42 weeks. Thereafter the defendant declined to make further payments, and plaintiff filed a supplemental petition under his reserved right to apply for a modification of the judgment within 6 months from the date of its rendition. It is alleged in the supplemental petition that plaintiff’s physical condition is not improved, but has grown worse since the rendition of the judgment awarding him compensation, that the judgment should be modified and should decree that he be paid compensation at the rate of $8.78 per week for 400 weeks, subject to the compensation already paid, and that he should be allowed the sum of $250 for ipedical services which he should be receiving. The prayer is for a rule upon the defendant and, after a hearing thereon, for a modification of the judgment as set forth in the petition.
 

 When the rule issued, the defendant for-warded to the plaintiff all back payments then due him, and since then has continued to pay him $8.78 per week-.
 

 The defendant answered the rule, and, on the motion of plaintiff, it was assigned for a fixed date. When the hearing on the rule was taken up it was shown to the court that defendant was promptly paying the fixed weekly compensation to the plaintiff and would continue to make said payments, and for that reason defendant's counsel moved for a temporary stay of proceedings, which motion, after argument of counsel thereon, was granted. Relator then applied to this court for a writ of mandamus to compel the district judge to cancel his stay order, and to try and render judgment ón the rule. A rule to show cause issued, and in response thereto the district judge has filed a return and has sent up the record for review.
 

 It may be said here that relator’s demand for $250 for medical services is not a demand for services rendered, or now being rendered, but it is merely relator’s personal estimate of the possible cost of medical services that his condition may require in the future.
 

 • [1] The judgment quoted supra awarded relator all the cost of medical services rendered him prior to its rendition, and it appears that since then relator has declined to permit his employer to furnish such services. Section S (K) 5 of Act 85 of 1926, p. 121, is, in part, as follows:
 

 “Tbe employer shall in every ease coming under this act, furnish reasonable medical, surgical and hospital services and medicines not to exceed $250.00 in value, unless the employee refuses to allow them to be furnished by the employer,” etc.
 

 It appears that the employer is willing and has insisted upon furnishing relator such medical and surgical services and medicines as the law requires. It is therefore apparent that, so long as relator persists in declining the medical services tendered by the employer, he is without a right of action as to his demand for a moneyed judgment for medical services, which he alleges he should now be receiving. If it were otherwise, and relator
 
 *143
 
 could lawfully assert his demand for such a judgment, at this time, the learned judge should, and doubtless would, have passed upon that demand promptly. The return of the respondent judge shows that in granting the temporary stay order he was actuated by a desire to conserve the best interests of relator and to secure for him compensation, of which he might have been deprived if the rule had been tried and the issues raised by the answer thereto had been passed upon, and to secure to him weekly payments of compensation of which he would certainly have been deprived, for a long period of time, if judgment had been rendered in favor of relator and the defendant had suspensively appealed therefrom.
 

 Sections 9 and 10 of Act No. 20 of 1914 have not been amended. These sections, in part, are as follows:
 

 “Sec. 9. 1. Be it further enacted, etc., that an injured workman shall submit himself to examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter, as often as may be reasonably necessary and1 at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this act,” etc.
 

 “See. 10. 1. Be it further enacted, etc., that if the workman refuses to submit himself to a medical examination as provided in section 9, or in anywise obstructs the same, his right to compensation and to take or prosecute any further proceedings under this act shall be suspended until such examinations take place. And, when a right to compensation is suspended no compensation shall be payable in respect of the period of suspension,”, etc.
 

 Respondent judge in his return says that relator is a negro of a low degree of mentality, and, as a defense to the rule filed by him, it was pleaded that he refused to report for medical examination and treatment. Following his preliminary statements, which we have summarized, the respondent judge says:
 

 “Respondent shows that when this matter was set for hearing on February 1928, as alleged in paragraph 9 of relator’s petition, counsel for both plaintiff and defendant ip this matter stated that compensation was being paid the injured employee, irrespective of the fact that he had failed and refused to- report for medical examination and treatment.
 

 “Respondent further shows that orí said date the said Howard Coleman was in. court and counsel for defendant,' W. G. Butler, asked Coleman what means he had to live on in the event a judgment was rendered in his favor and in the event the said Butler should' take a suspensive appeal, and that said Coleman stated that he had no means or funds whatsoever except the compensation that is being paid him.
 

 “Respondent further shows that counsel for the defendant stated to 'the court that, on account of the low mentality of the plaintiff, he did not desire to urge against him, as a defense, his failure to report for medical examination and treatment, which, under the Compensation Act of the state of Louisiana, §§ 9 and 10, would deprive the said Coleman of compensation during the period of his failure to report for medical examination and treatment, and said counsel for the defendant further stated to the court that if no judgment was rendered, the defendant, through his insurer, would continue paying compensation.
 

 “Respondent further shows that under the Workmen’s Compensation Act of the state of Louisiana, it. is his duty to decide cases coming under said act as summarily and as equitably as possible, without being restricted by the usual rules of procedure and evidence, and he shows that in this case, after learning that compensation was actually being paid the plaintiff, Howard Coleman, and after learning that the said Howard Coleman had no means of existence except said compensation, and after learning that the defendant had a real defense in the case on account of the failure of said Coleman to report for medical examination and treatment, was of the opinion that the equitable thing to do was to temporarily stay proceedings herein.
 

 “Respondent further shows that the temporary stay order complained of was granted only on the understanding that compensation payments to the said Coleman should be continued during said stay.”
 

 Under the circumstances, the act of the respondent judge temporarily staying further proceedings on the rule secured for relator weekly compensation of which he would otherwise have been deprived, and it was the proper and commendable course to pursue. The ruling indefinitely postponed the collec
 
 *145
 
 tion of relator’s attorney’s fees, but that is a matter with which the court is not concerned.
 

 For the reasons stated, the rule nisi is recalled and vacated, and the application for writ of mandamus is denied.
 

 ST. PAUL, J., dissents.