EUGENE SZOLD, Plaintiff, *v.* OUTLET EMBROIDERY SUPPLY Co., INC., Defendant.

Supreme Court, Special Term, New York County, June 2, 1936.

*Patrick S. Mason, Special Assistant Attorney-General* [*Ernest Tischler* of counsel], for the defendant, for the motion.

*John J. Bennett, Jr., Attorney-General* [*Joseph A. McLaughlin* and *Maurice H. Matzkin, Assistant Attorneys-General*, of counsel], for the Industrial Commissioner of the State of New York, for the motion.

*Lorenz J. Brosnan*, for the Medical Society of the State of New York, as *amicus curiæ*, for the motion.

*Hayt & Hayt* [*Emanuel Hayt* of counsel], for the plaintiff, in opposition to the motion.

SHIENTAG, J.   This motion to dismiss the complaint for insufficiency raises certain questions concerning the scope and validity of amendments to the Workmen's Compensation Law enacted in 1935.

These amendments deal generally with the authorization of physicians by the Industrial Commissioner to treat workmen's compensation cases, the regulation of such practice and the respective rights of employee and employer to the choice of physicians. The new sections, 13-a to 13-j, of the Workmen's Compensation Law contain many detailed provisions, with the scope and interpretation of which we are not here concerned. I shall deal only with the questions directly presented on this motion.

Plaintiff is a physician who has treated an injured employee entitled to medical care under the Workmen's Compensation Law. The employer arranged for the physician to render this treatment. The physician is now suing the employer in this court to enforce payment of his bill. He has not alleged in the complaint that he has been duly authorized to render medical care under the Workmen's Compensation Law, as amended in 1935. The sole question raised on this motion is whether the failure to include such an allegation in the complaint renders it defective so as to entitle the defendant to a dismissal. It is unnecessary to consider whether under the amended statute the plaintiff, even if authorized to treat compensation cases, had his common-law right of action abrogated and was relegated to his remedy under the Workmen's Compensation Law. The parties do not raise that point.

There is no question but that under the Workmen's Compensation Law as it stood prior to the amendments enacted by the Legislature in 1935 the plaintiff's complaint would state a good cause of action against the defendant. While the old law provided for medical care and treatment of injured employees, there was scant provision regulating the rendering of such treatment. The guiding principle was that the employer was to provide medical care and he it was who in the ordinary case chose the physician. So under the old law it was held that the Industrial Board had no jurisdiction to make an award for hospital bills or physicians' services except in two cases:

(1) Where the employee requested his employer to furnish medical treatment and the employer neglected or refused to do so.

(2) Where the nature of the injury required such treatment and the employer or his superintendent or foreman, having knowledge of such injury, neglected to provide same.

In cases other than those mentioned, the employer under the old law became directly obligated to the physician, who had his remedy in the courts and not under the Workmen's Compensation Law. (*Weinreb* v. *Harlem Bakery*, 204 App. Div. 293; *Feldstein* v. *Buick Motor Co.*, 115 Misc. 170; *Frant* v. *Cobban & Son, Inc.*, 133 id. 433; affd., 226 App. Div. 796.)

Protests came from various sources directed against abuses that had grown up involving the medical care of injured workmen and from time to time changes in the law were suggested. Two Governors of the State, recognizing the need for action, appointed committees to study the problem and to report with their recommendations. The present Governor appointed a joint committee of the Medical Society of the State of New York and the Academy of Medicine. A careful scientific study was made and many changes were proposed in the existing law. The report was made the subject of a special message to the Legislature. The Legislature responded and passed a number of amendments to the Workmen's Compensation Law, which are of vital importance so far as that law relates to the medical care of injured employees. For the first time, organized medicine as represented by the various county medical societies, and by the Medical Society of the State of New York, was given a definite part in the administration of the law.

The new law establishes a system whereby the rendering of medical care under the Workmen's Compensation Law is restricted to physicians specifically authorized to do such work by the Industrial Commissioner. Section 13-b of the Workmen's Compensation Law, enacted by chapter 258 of the Laws of 1935, effective July 1, 1935, provides: " The Commissioner shall upon the recommendation of the medical society of each county or of a board designated by such county society, or by a board representing duly licensed physicians of any other school of medical practice, authorize physicians licensed to practice medicine in the State of New York to render medical care under this chapter. If, within sixty days after the Commissioner requests such recommendations, the medical society of any county or board fails to act, or if there is no such society in the county the Commissioner shall designate a board of three qualified physicians, who shall make the requested recommendations."

The rights of physicians are fully safeguarded. The provisions to accomplish this are many and detailed. Suffice it to say generally that the procedure in connection with obtaining the recommendation is carefully outlined, and a physician who is aggrieved may appeal to the Industrial Council of the Department of Labor. The recommendation and authorization " shall specify the character of the medical care which such physician is qualified and authorized to render under this chapter."

" The medical society or board that has recommended the authorization of physicians to render medical care under this chapter shall investigate, hear and determine all charges of professional or other misconduct by any authorized physician, or by any com-

pensation medical bureau licensed as herein provided, under rules and procedure to be prescribed by the Industrial Council of the Department of Labor and shall report evidence of such misconduct, with their determination thereon, to the Commissioner. Such investigation, hearing, report and determination may be made by the board of an adjoining county upon the request of the medical society of the county in which the alleged misconduct or infraction of this chapter occurred. The Industrial Council of the department may review the determination of such medical society or board, and on application of the physician accused must do so, and may reopen the matter and receive further evidence. The decision and recommendation of such Industrial Council shall be final, binding and conclusive upon the Industrial Commissioner." (§ 13-d.)

The grounds for revoking the authorization of a physician to render medical care under the act are set forth in detail. (See § 13-d, subd. [2].)

The amendment in section 13-b provides in part as follows: " No person shall render medical care under this chapter without such authorization of the Commissioner provided, that: (a) emergency (first aid) medical care may be rendered under this chapter by any physician licensed to practice medicine in the State of New York without authorization by the Commissioner under this section; and (b) a licensed physician who is a member of a constituted medical staff of any hospital may render medical care under this chapter while an injured employee remains a patient in such hospital; and (c) under the active and personal supervision of an authorized physician medical care may be rendered by a registered nurse."

Equally important is section 13-f, subdivision (1): " Fees for medical services shall be payable only to a physician or other lawfully qualified person permitted by section thirteen-b of this chapter to render medical care under this chapter, or to the agent or to the executor or administrator of the estate of such physician. No physician rendering treatment to a compensation claimant, shall collect or receive a fee from such claimant within the State, but shall have recourse for payment of services rendered only to the employer under the provisions of this chapter. Hospitals shall not be entitled to receive the remuneration paid to physicians on their staff for medical and surgical services."

The purpose of the law clearly is to restrict the treatment of all compensation patients to doctors who have been authorized by the Industrial Commissioner. Except in case of emergency and where a patient is confined in a hospital, only an authorized physician may render medical care and receive payment therefor. Neither of these exceptions is present in the case at bar.

Further analysis of the changes in the law makes clear the reasons for the specific enactments restricting compensation medical practice. Under section 13-a, an injured employee is given the choice of the physician who is to treat him, with the limitation that the physician chosen by him must be one authorized by the Industrial Commissioner. This new provision granting free choice to the employee is a salutary step, since it was the absence of such right that gave rise to so many abuses under the old law.

The plaintiff in this action contends that he has a common-law right to proceed against the employer for the collection of his bill, and that such common-law right is not subject to the limitations of the amended law. Various cases are cited in support of such contention. All of those cases, however, were decided under the old law, when there was no restriction as to what doctors were entitled to engage in compensation medical care, and they are no longer valid as precedents under the amended statute.

Prior to the enactment of the Workmen's Compensation Law an employer was under no duty to provide medical care, and now that such duty is imposed the employer is subject to all of the provisions of the law as amended from time to time. Under the amendment, if an employer furnishes medical treatment to an employee he must provide an authorized physician, since no other may legally treat compensation patients. To hold otherwise would be to circumvent and render nugatory the salutary amendments which those interested in the proper administration of this beneficent statute have striven so long to obtain. Whether the doctor is chosen by the employee, or under certain enumerated conditions by the employer, one thing is implicit in the amended statute, the physician must be one authorized to render medical treatment in workmen's compensation cases.

It would be a far-fetched construction of the statute and one leading to unjust results to hold that if an employee selected a physician he must be one duly authorized under the act, whereas if the choice were one which the employer could make he might select any physician whether authorized to render services under the Workmen's Compensation Law or not. There is no such distinction in the words of the statute. Such a distinction should not be read into the statute by implication.

If the plaintiff in this action is entitled to prevail there can be no question but that the desirable benefits of the 1935 amendments to the Compensation Law will to a large extent be nullified. Any unauthorized physician would then be entitled to bargain with employers for the treatment of injured employees. Whenever the employee does not object, and in many cases through pressure from

the employer or through ignorance of the law he will not object, such unauthorized physicians would be in a position to provide medical care for fees at variance with the prescribed schedules of minimum fees and without being subject to the disciplinary provisions of the amended statute. The door would then be open to a revival of the very abuses which the amended law was intended to cure, the cut-throat competition and commercialization of compensation medical practice, the improper " lifting " of cases and the inadequate and inefficient treatment of injured workers.

The physician who renders his services pursuant to the requirements of the Workmen's Compensation Law has no greater rights than the employer or employee under that statute. Some of the arguments which are now made by the plaintiff in this case are essentially the same as those which were advanced against the Workmen's Compensation Law itself.

It will be recalled that many attacks were made upon the constitutionality of the Workmen's Compensation Law when first enacted. The original measure was declared unconstitutional. Thereafter article I, section 19, of the State Constitution was enacted to provide that " Nothing contained in this Constitution shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees; or for the payment, either by employers, or by employers and employees or otherwise, either directly or through a State or other system of insurance or otherwise, of compensation for injuries to employees or for death of employees resulting from such injuries without regard to fault as a cause thereof." Here is a power conferred upon the Legislature to prescribe a new method of protecting those who were unable to protect themselves. It made possible provisions for a scheme whereby the employee " was to be saved from becoming one of the derelicts of society, a fragment of human wreckage. * * * He was to have enough to sustain him in a fashion measurably consistent with his former habits of life during the trying days of readjustment. The cost of such support becomes a charge upon the industry without regard to fault." (*Surace* v. *Danna*, 248 N. Y. 18, 21.)

Following this constitutional amendment a new Workmen's Compensation Law was passed. Its validity has been upheld by the highest courts of the State and the nation, without any amendment of the Federal Constitution. This is now legal history. (*Matter of Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514; *N. Y. Central R. R. Co.* v. *White*, 243 U. S. 188; *Dahlstrom Metallic Door Co.* v. *Industrial Board*, 284 id. 594; *Miller Cabinet Co.* v. *State Industrial Board*, 291 id. 646; *Matter of Sweeting* v. *American Knife*

*Co.*, 226 N. Y. 199, affg. 186 App Div. 926; *N. Y. Central R. R. Co.* v. *Bianc*, 250 U. S. 596; *Matter of Erickson* v. *Preuss*, 223 N. Y. 365.)

The practice of medicine is a property right, but one which is subject to the most stringent regulations. The right to practice medicine must yield to the paramount right of the State to protect health by any rational means. (*Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424; 132 N. E. 174; *People* v. *Witte*, 315 Ill. 282; 146 N. E. 178.)

The rule is well established that a State may, without violating the constitutional rights of an individual, prescribe reasonable regulations for the practice of medicine within its boundaries. " It is too well settled to require discussion at this day that the police power of the States extends to the regulation of certain trades and callings, particularly those which closely concern the public health. There is perhaps no profession more properly open to such regulation than that which embraces the practitioners of medicine." (*Watson* v. *Maryland*, 218 U. S. 173, 176.) (See, also, *Steinbach* v. *Metzger*, 63 F. [2d] 74; *People* v. *Ellis*, 162 App. Div. 288; *People* v. *Mulford*, 140 id. 716; affd., 202 N. Y. 624.)

The power of the Legislature to regulate medical practice is clear. As the State may impose requirements prerequisite to a license to practice medicine generally, so it may impose additional requirements as a condition to permitting a physician already licensed as such to practice and to treat employees under the Workmen's Compensation Law. That the need for such additional regulation was a real one cannot be questioned.

The right to practice medicine is not essentially different from the right to practice law. Yet the fees of attorneys in compensation cases have been strictly limited and the courts have upheld those limitations. (See Judiciary Law, § 474; Workmen's Compensation Law, § 24; Rules of the Industrial Board, rule 17-a; *Matter of Fisch*, 188 App. Div. 525.) Even if some of the common-law rights of the plaintiff have been abrogated or restricted, the provisions of the amended statute do not offend against any vested right. " No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." (*N. Y. Central R. R. Co.* v. *White*, 243 U. S. 188, 198.)

The requirement here in question is reasonable and one within the power of the Legislature to make in the interest of the health and welfare of injured employees and in order that employers and the community may receive the full benefits of the humanitarian law, the costs of administering which they bear. The requirement for authorization of physicians to treat compensation cases bears a

reasonable relationship to the orderly and efficient administration of the remedial statute of which it is a part. It is in the interests of the physicians of the State as well. The large number of decent, reputable, competent physicians are fully protected. It is significant that the Medical Society of the State of New York, as *amicus curiæ*, has submitted a most convincing brief in support of the position here taken. Courts should be slow to interfere in a field where the Legislature is competent to act. The Workmen's Compensation Law as a whole and in its component parts should be liberally construed with a view to the accomplishment of its humane purpose. I hold, therefore,

(1) That the Legislature has power to abrogate in whole or in part the common-law rights of physicians who treat workmen's compensation cases. By that I mean, for example, that the Legislature has power to provide that a physician's exclusive remedy to recover payment for treating compensation cases shall be under the Workmen's Compensation Law and not in the courts; that it may by reasonable provisions restrict and limit the contractual relations between physicians on the one hand and employers or injured employees on the other, and that such reasonable restrictions may be made applicable not alone to the awards to physicians under the Workmen's Compensation Law but to actions for services in the courts as well;

(2) The requirement that only physicians who are specially authorized by the Industrial Commissioner for that purpose may treat injured employees in accordance with the provisions of the Workmen's Compensation Law is a reasonable one, calculated to accomplish the humane objects of that statute and to do away with abuses and evil practices that arose in connection with its administration;

(3) No physician under the amended statute is permitted to treat compensation cases or entitled to be paid therefor unless he is authorized by the Industrial Commissioner, and this applies whether the physician is chosen by the employee or by the employer;

(4) Assuming but not deciding that a physician chosen by an employer to treat a compensation case may, despite the amended statute, sue the employer in the courts for payment of his services, as a condition to recovery he is required to allege and prove that he was duly " authorized " to render medical care to injured employees under the Workmen's Compensation Law.

The motion to dismiss the complaint is accordingly granted.