## JOHN J. CARMODY v. CITY OF ST. PAUL.[1]

May 3, 1940.

No. 32,365.

*Arthur A. Stewart,* for relator.

*John W. McConneloug* and *Homer Gannaway,* for respondent.

*Elmquist, Felhaber & Elmquist* and *Charles E. Elmquist, amici curiae,* filed a brief on behalf of Minnesota Employers Association.

*Nichols, Mullin & Farnand, amici curiae,* filed a brief on behalf of Minnesota State Federation of Labor.

[1]Reported in 291 N. W. 895.

*F. Manley Brist, amicus curiae,* filed a brief on behalf of Minnesota State Medical Association.

HILTON, JUSTICE.

*Certiorari* to the industrial commission.

Relator was employed by the city of St. Paul as a fireman. On December 29, 1938, he suffered an injury during the course of his employment. Upon entering the hospital, relator requested and obtained his family physician, Dr. H. A. Molander, to render the necessary medical attention. Relator refused treatment by doctors designated by the city to minister to employes injured in the line of duty. Compensation during the period of disability and hospital expenses have been paid by the city. It refuses to pay the $110 incurred for medical treatment on the ground that relator refused its proffered assistance by one of its designated physicians. There is no question that the city was ready, able, and willing to give proper medical treatment through one of its specified physicians and would have done so but for relator's refusal.

Previous to the time of the injury, the city council determined that in some instances, which it thought occurred too frequently, injured city employes were being given improper treatment and the city was being overcharged by doctors. Proposing to remedy the situation, a resolution was passed providing for the designation of five doctors to treat employes. Notices were posted in fire barns giving the names of the physicians and directing that "any employe * * * injured in the line of duty, shall report to any of the following doctors for treatment. The city of Saint Paul will not be responsible for medical bills incurred elsewhere." By the resolution it was provided that if the injured employe had a family physician the city "shall pay the reasonable cost of consultation of said physician when such consultation is requested of the City by the employe or any member of his or her family." Relator was fully acquainted with the contents of the cards that were posted.

Presented, then, is the question whether an employe who insists upon treatment of his compensable injury by a physician of his own choice can obtain under the workmen's compensation act the reasonable value of the services rendered when the employer is willing and ready to the knowledge of the employe to furnish and pay for proper medical treatment by a physician of the employer's choice but not otherwise.

The referee and the industrial commission both took the view that the relator's claim should not be allowed.

Decision requires that the provisions of the compensation act as amended from time to time be considered, for here is the source of much of the disagreement.

The original compensation act adopted in 1913, L. 1913, c. 467, § 18, provided:

"Such medical and surgical treatment * * * as may be reasonably required at the time of injury and thereafter during the disability, but not exceeding ninety (90) days, to cure and relieve from the effects of the injury, the same to be provided by the employer and in case of his inability or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employe in providing the same; provided, however, that the total liability * * * shall not exceed the sum of one hundred dollars * * *."

In 1921, after study by an interim committee, amendments were made to the 1913 law. By L. 1921, c. 82, § 19, it was enacted that such medical and surgical treatment "as may reasonably be required at the time of the injury, and during the disability for not exceeding ninety (90) days and not exceeding one hundred ($100.00) dollars in value, to cure and relieve from the effects of the injury, shall be provided by the employer and in case of his inability or refusal seasonably to do so, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing the same."

Added to the compensation act in 1921 was the following:

"The Commission may upon the petition of an *employe* and a proper showing of cause therefor order a change of physicians and designate a physician suggested by the injured employe or by the Commission itself and in such case the expense thereof shall be borne by the employer" on the same terms as provided in the section previously quoted. (Italics supplied.)

The report of the interim committee of the house of representatives to the 1921 legislature stated with reference to the provision permitting the commission to order a change of physicians on the petition of the employe as follows (Journal of the House, 1921, p. 1843):

"(11) Provision authorizing the Industrial Commission to order a change of physicians on application of the injured person to some physician named by the injured employe or the Commission itself. This provision is intended to overcome the objection to permitting the employer to select any physician and require the employe to accept him."

At this point the case of Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981, 982, decided December 1, 1922, must be inserted into the picture. Lading, an employe of the city of Duluth, suffered compensable injuries. The city had in its employment a physician who would have treated plaintiff had he consented. Instead, plaintiff called one of his own choice. He then sought to obtain the reasonable value of the physician's services. The city resisted the claim on the ground that since there was a regular city physician who would have rendered medical treatment the employe was not entitled to be reimbursed. Section 19 of the 1921 compensation law was the statute which we had to consider. We held that Lading could not recover the reasonable value of the rendered services since [153 Minn. 466] "to justify a recovery of the reasonable value of the services of a physician called by the employe, it must appear either that the employer was unable to furnish one or that he refused to do so. Upon this the statute leaves no doubt, but the requirements thereof

were not met by plaintiff." Under the statute of 1921, one of these alternatives had to be established before the reasonable value could be recovered. However, it was also held that the employer was liable to reimburse Lading to the extent of $100, the statutory limit at this time. We there said (153 Minn. 467) :

"But we are of opinion that the statute should not be construed to impose upon the employe the unqualified obligation to accept the physician selected by the employer, or forfeit the right of reimbursement there given. It often happens, a situation perhaps more or less general, that the employe has a family physician to whom he prefers to turn in case of injury or sickness, rather than to accept the services of another with whom he has no acquaintance or in whom perchance he has no confidence. In that situation he should have the option or unquestioned right to choose his medical attendant, or accept the one tendered him by the employer, but within the limits of liability on the part of the employer imposed by the statute. The statute contains no language unconditionally requiring the latter to accept the physician tendered him or relinquish the right of reimbursement altogether, and we construe it to give him that option."

If the report of the interim committee exemplifies the intention of the legislature in amending the provision with respect to medical treatment, there is little room for doubt that the construction adopted by this court diametrically opposed the purpose of the lawmakers. But before we can consider impeaching the Lading decision [153 Minn. 464, 190 N. W. 981] attention to legislation after that case was determined must be given. In this, perhaps, will be found convincing reasons why we should not alter that decision.

In 1923 the legislature amended § 19, which had been the subject of construction in the Lading case. As amended it read, L. 1923, c. 300, § 6 (1 Mason Minn. St. 1927, § 4279) :

"The employer shall furnish such medical * * * treatment * * * as may reasonably be required at the time of the injury, and during the disability for not exceeding ninety (90) days

to cure and relieve from the effects of the injury, provided that in case of his inability or refusal seasonably to do so, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing the same; * * *.

"The Commission may at any time upon the request of an *employe* or *employer* order a change of physicians and designate a physician suggested by the injured employe or by the Commission itself and in such case the expense thereof shall be borne by the employer." (Italics supplied.)

As we understand the statutes, despite the fact that in the 1921 enactment the words "shall be provided by the employer" were used while in the 1923 statute it reads, "the employer shall furnish," the fundamental rights and duties of the employer and employe are substantially the same under both statutes except that the financial limit on the employer's liability is removed by the 1923 law and the employer is given the right to apply for a change of physicians. Manifestly the 1923 legislature could have specifically provided that the employer could designate a physician whom the employe must accept or forfeit any claim against the employer for physician's services. But it did not. Instead it enacted a statute which was, so far as substance is concerned, the same as the 1921 statute except for the two mentioned changes. It must be remembered that the Lading decision [153 Minn. 464, 190 N. W. 981] was decided under the 1921 enactment. As additional evidence that the 1923 legislature accepted the holding of the Lading case is the fact that in 1923 the employer was given the right to apply for a change of physicians. By removing the $100 limitation found in the 1921 statute, the substantive obligation of the employer as determined in the Lading case was not destroyed.

In 1929 the legislature adopted amendments to the compensation law. L. 1929, c. 248 (3 Mason Minn. St. 1940 Supp. § 4279), amended the medical provisions of the 1923 act. The provisions of the 1923 law were for all practical purposes reënacted except that the 90-day limit was dropped. Consequently, despite more

than ample opportunity to alter the rule of the Lading case [153 Minn. 464, 190 N. W. 981] the legislature has not done so. With this background, we do not think it is fitting that we should now reëxamine the Lading decision to determine its soundness or unsoundness as an original proposition. Since the legislature has, in effect, adopted that holding and it has become a part of the compensation law, it is more proper that if any change is to be made at this late stage the legislature should do it.

We think that the employe should have been awarded the amount claimed which the parties have stipulated is reasonable. Under the statute, if the city is of the opinion that improper care is being given an employe, it can apply for a change of physicians. If the occasion again arises where the city officials think excessive charges are being made, application can be made to the commission for a determination. These safeguards have been adopted by the legislature to prevent abuses which might arise.

So that there may be no doubt in the future, it is proper to discuss some of our decisions which counsel have cited.

In Bookman v. Lyle C. & R. Equipment Co. 153 Minn. 479, 190 N. W. 984, the decision of the Lading case [153 Minn. 464, 190 N. W. 981] was applied in a situation where the employer denied liability for the injury. Nothing in the opinion is in conflict with the Lading case.

Zobitz v. Oliver I. Min. Co. 167 Minn. 424, 209 N. W. 313, involved a case where the employe had his injury treated by the physician designated by the employer. The treatment continued for more than 90 days, the statutory limit at that time. Nearly a year after the injury the employe went to a doctor he selected. Since the employe never obtained an extension of the period of treatment, the employer was not liable for the additional treatment. Consequently, it was immaterial to the decision to say anything about the failure of the employe to apply for a change of physicians. The question presented here was never actually reached in the Zobitz case.

Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215, is relied upon by respondent. There is nothing to show that the employe involved there ever objected to treatment by a physician designated by his employer nor did the parties question the power of the commission to order submission to treatment by a physician selected by the employer. We do not think the issue here raised was there involved.

In Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397, the employer denied liability for the injury and the employer's selected physician told the employe to return to the doctor he first consulted. On these facts it was held that the commission was fully justified in requiring the employer to pay the expenses of the employe in obtaining the treatment. Obviously the case never decided the question here.

Fitzgibbons v. Clarke, 205 Minn. 235, 285 N. W. 528, did not involve anything touching upon the present case.

Relator will be allowed $100 attorney's fees in this court.

Since it has been stipulated that the amount of the claim is reasonable, the order is reversed and the cause is remanded with directions to award relator the $110 spent in employing his own physician.

Order reversed and cause remanded with directions.

GALLAGHER, CHIEF JUSTICE (concurring specially).

It seems to me that the court misconstrued the provisions of L. 1921, c. 82, § 19, in Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981, when it held § 19 thereof to vest in an injured employe the right to select a physician of his own choice. That section required an employer to furnish such medical, hospital, and other expenses specified as might reasonably be required, within limits as to time and amount provided in the act, to cure and relieve an injured employe from the effects of an injury. Then followed the provision which gave to the employe the right to petition the industrial commission for a change of physicians, clearly indicating a legislative intent to give to the employer the original right of selection. It reads [L. 1921, c. 82, § 19]:

"The Commission may upon the petition of an employe and a proper showing of cause therefor order a change of physicians and designate a physician suggested by the injured employe or by the Commission itself and in such case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance."

While the exact question presented in the Lading v. City of Duluth case, 153 Minn. 464, 190 N. W. 981, does not appear to have been before the court since that case was decided in 1922, the principle involved has been referred to in a number of subsequent decisions. Zobitz v. Oliver I. Min. Co. 167 Minn. 424, 209 N. W. 313; Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215; Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397. These references have all indicated a view out of harmony with that expressed in the Lading case. The courts of other states having compensation acts similar to ours have almost universally followed the opposite rule. Johnson v. Roberts, 212 Ala. 535, 103 So. 563; Cella v. Industrial Acc. Comm. 38 Cal. App. 760, 177 P. 490; Olmstead v. Lamphier, 93 Conn. 20, 104 A. 488, 7 A. L. R. 542; Johnston v. A. C. White Lbr. Co. 37 Idaho, 617, 217 P. 979; Swift & Co. v. Industrial Comm. 288 Ill. 132, 123 N. E. 267; Indiana Liberty Mut. Ins. Co. v. Strate, 83 Ind. App. 493, 148 N. E. 425; Almquist v. Shenandoah Nurseries, Inc. 218 Iowa, 724, 254 N. W. 35; Coleman v. Butler, 166 La. 138, 116 So. 828; Gardner v. Michigan Sugar Co. 231 Mich. 331, 204 N. W. 100; Schutz v. Great American Ins. Co. 231 Mo. App. 640, 103 S. W. (2d) 904; Radil v. Morris & Co. 103 Neb. 84, 170 N. W. 363, 7 A. L. R. 539; Grogan v. Granger, 16 N. J. Misc. 533, 2 A. (2d) 884; Johnson v. Armstrong & Armstrong, 41 N. M. 206, 66 P. (2d) 992; Szold v. Outlet Embroidery Supply Co. Inc. 159 Misc. 911, 289 N. Y. S. 411; Skelly Oil Co. v. Barker, 132 Okl. 279, 270 P. 566; Smith v. State Industrial Acc. Comm. 104 Or. 640, 208 P. 746; Security Union Ins. Co. v. McClurkin (Tex. Civ. App.)

35 S. W. (2d) 240; City of Milwaukee v. Miller, 154 Wis. 652, 144 N. W. 188, L. R. A. 1916A, 1, Ann. Cas. 1915B, 847.

However, the legislature has seen fit to permit the compensation act to stand substantially as it was when the Lading case [153 Minn. 464, 190 N. W. 981] was decided, altering its effect, insofar as the right to select a physician is concerned, only to the extent of permitting the employer, as well as the employe, to petition the industrial commission for a change of physicians. L. 1923, c. 300, § 6. Because of the failure of the legislature to amend the statute so as to negate the Lading case, I feel compelled to join the other members of the court in accepting the rule there enunciated as the law.

There is much to be said in favor of permitting an employe who is injured to select his family physician or some other physician of his choice. There is also much to be said in favor of giving to the employer, who is required to pay the bills, a voice in the selection of the physician. This is a matter of policy, however, for determination by the legislature and is not a question which concerns the court.

STONE, JUSTICE.

I concur in the opinion of Mr. Chief Justice Gallagher.