# NELS LUND v. BIESANZ STONE COMPANY AND ANOTHER.[1]

April 17, 1931.

No. 28,401.

*Denegre, McDermott, Stearns, Stone & Mackey,* for relators.
*Webber, George & Owen,* for respondent.

HOLT, J.

Certiorari to review a decision of the industrial commission.

It is conceded that respondent was accidentally injured while in the employ of the relator Biesanz Stone Company whereby he became entitled to compensation under the workmen's compensation act. The accidental injury was received May 11, 1926. His weekly wage was $22.20. Since the injury respondent has received medical, surgical, and hospital benefits in the sum of $2,839.85 and has been paid weekly $14.80, amounting to $2,289.60 in all. But

[1]Reported in 236 N. W. 215.

on June 4, 1929, relators on notice discontinued further payments. A hearing upon the right to discontinue was had before a referee on April 25, 1930. Dissatisfied with his decision, relators appealed to the industrial commission, whose decision is now questioned.

The commission found:

"That since the date of said accidental injury on May 11, 1926, to April 25, 1930, the date of the hearing herein, the said employe was actually totally disabled, and that said actual disability was not terminated at the date of said hearing but will probably continue as total or partial disability for a considerable period of time after said date, and that said injury is likely to result in some permanent partial disability of the left arm, as well as some permanent partial disability of the leg, the extent of which permanent disabilities is not yet definitely determined."

The finding is challenged as unsustained except as to the disability of the left arm, which the parties stipulate is permanently disabled to the extent of five per cent. The total temporary disability referred to is the result of the leg injury. Both bones were fractured in the right leg somewhat more than nine inches below the knee joint. Several operations were made on the leg at a hospital in Winona, the place of the accident, and at a hospital in Minneapolis where the respondent was kept by relators for more than a year. Still the leg is in such condition that the surgeons who testified are in accord that amputation is the treatment most likely to reduce the disability now existing, which is practically total—the leg being in such condition that he cannot walk without crutches, cannot bear his weight on the leg for any appreciable time, and cannot even sit in the ordinary way with the leg flexed, but must have it extended or supported to obtain relief from pain.

Respondent is an ordinary laborer, and some of relators' experts think he might do such labor as can be done in a sitting posture. But the evidence on this point is such that the finding above quoted, to the effect that respondent is still temporarily totally disabled, cannot be disturbed by us.

The respondent's condition presents a troublesome problem under the compensation act. While all the medical experts are agreed that amputation will remove disability in a marked degree, they are not agreed as to whether the amputation should be above or below the knee. But the opinion is that in either event there will be a good stump for attaching an artificial limb.

It is common knowledge, which the record substantiates, that men with an efficient artificial leg engage in different remunerative occupations. Respondent has submitted to several operations. The law is silent as to the power of the industrial commission to require one within the act to submit to amputation. Nor is there any provision indicating that in case an injured employe declines to have a worse than useless limb amputated the commission should limit compensation to the schedule rate for the loss or the loss of the use of the limb. Had the amputation instead of setting the fractures been resorted to in the first instance, the hospital charges already paid would more than have sufficed to pay for an artificial limb and the healing period expenses, including surgical and hospital costs, and left enough over to pay compensation for the balance of the 175 weeks, which under G. S. 1923, § 4274(c), subds. 18 and 40, as amended, 1 Mason, 1927, id. (schedule) is the amount fixed for the loss or the loss of the use of a leg—respondent having already received compensation for 134 weeks. But we have here a man who has not lost his leg, yet is temporarily totally disabled because of the fact that though useless the leg, is still a part of the body, causing pain and preventing by its condition the ability to labor. Relators have made commendable efforts to effect a cure. They have kept him for over a year in a hospital attended by a surgeon of their own selection in the hope of partly or wholly removing the disability. So far as this record indicates respondent has co-operated. It does not appear that he has refused to permit amputation. Upon the finding quoted we think the case is ruled by State ex rel. Albert Lea P. Co. v. District Court, 146 Minn. 283, 178 N. W. 594.

A case decided by the court of appeals of New Jersey, Simpson v. New Jersey S. & T. Co. 93 N. J. L. 250, 107 A. 36, is much like

the case at bar. However we find difficulty in harmonizing that decision with others from the same state rendered by its supreme court. Rakiec v. D. L. & W. R. Co. (N. J.) 88 A. 953; Bateman Mfg. Co. v. Smith, 85 N. J. L. 409, 89 A. 979; Feldman v. Braunstein, 87 N. J. L. 20, 93 A. 679. It should also be noted that the compensation act of that state differs somewhat from ours.

Two cases from Nebraska are cited by relators for their position that compensation should be awarded as for the loss of the use of the leg. Hull v. U. S. F. & G. Co. 102 Neb. 246, 166 N. W. 628; Schroeder v. Holt County, 113 Neb. 736, 204 N. W. 815. The only distinction between those cases and the one at bar is that the findings in the former were final as to disability, here they are that "the extent of which permanent disabilities is not yet definitely determined." One other feature of distinction is the pain here present unless the leg is kept in an extended position, which probably will remain unless removed by treatment or amputation.

It must be conceded that relators' theory is to a certain extent supported by State ex rel. Globe Ind. Co. v. District Court, 136 Minn. 147, 161 N. W. 391.

Error is also assigned upon the conclusion of law which awarded compensation of $14.80 a week from May 11, 1926, to April 25, 1930, "less compensation heretofore paid, and thereafter as such actual disability may exist, either total or partial as provided by the compensation law; together with medical, hospital, and surgical benefits necessary to cure and relieve from the effects of said accidental injury, together with compensation in excess of such compensation for actual disability, if any, which may arise under the schedule of permanent partial disabilities that may result and 25 weeks healing period, as provided in permanent partial disability schedules of the compensation law."

The commission in its decision further ordered relators to designate a competent surgeon to treat respondent, to notify respondent thereof, and further that if respondent refuses to submit himself for treatment to the surgeon designated upon tender of expenses involved in submitting himself thereto, further compensation shall

be suspended until such time as he shall comply. We think the conclusion of law is proper upon the finding of fact above quoted. As yet relators have not paid the schedule rate of compensation if this be a case of the loss of the use of a leg. It is apparent that the commission has not determined that this case comes under (d) or (e) of § 4274, and it is not perceived how it can. Neither has the commission as yet placed it under (a) of that section or under subd. 44 of (c). Upon the findings of fact we think the conclusion of law or conditional award the only one that could now be made.

The endeavor of relators to effect a cure and reduce the disability has been long-continued and expensive; therefore the usual attorney's fee to respondent in this court should be quite moderate and is allowed at $75.

The decision is affirmed.

STONE, J. took no part.