LUCRETIA L. LEWIS AND OTHERS v. DON D. LEWIS AND OTHERS.[1]

January 23, 1942.

No. 32,971.

[1]Reported in 2 N. W. (2d) 134.

588

*Mohn & Watson,* for appellants.

*A. J. Rockne* and *Albert Mohn,* for respondents.

LORING, JUSTICE.

This was a suit begun in August 1939 to cancel a deed conveying real estate, to partition or sell that realty, and to compel an accounting by defendants of personal property and profits therefrom alleged to be in defendants' possession and owned by plaintiffs and defendants as tenants in common. All parties involved are heirs or legal representatives of heirs of Silas Lewis, deceased. Plaintiffs are Lucretia Lewis and Myrtle Dalton, daughters, and H. E. Doebler, administrator of the estate of Jennie Doebler, deceased daughter. Defendants are Don Lewis and Edith Rosing, son and daughter respectively, and J. A. Anderson, administrator of the estate of Elizabeth Lewis, deceased widow. The court made findings favorable to plaintiffs except as to the real estate. Defendants moved for amended findings or a new trial. The court amended its findings in a minor respect and denied the motion for a new trial. Defendants appeal.

The court found as facts that Silas S. Lewis died intestate May 16, 1929, seized of real and personal property, and leaving as his heirs at law his widow, Elizabeth Lewis, and his five children, Myrtle M. Dalton, Jennie J. Doebler, Lucretia L. Lewis, Edith E. Rosing, and Don D. Lewis; that the probate court appointed Don administrator of his father's estate, and he filed a purported inventory; that at the time of his death Silas owned a half interest in a newspaper known as the *Cannon Falls Beacon,* and Lionel Erickson owned the other half as active partner; that this property was included in the inventory; that a note for $500 given by Don to his father was omitted; that the probate court entered a final decree conveying the homestead to the widow for life, fee to the five children equally, one-third of the balance of the realty to the widow in fee, the remaining two-thirds of the realty to the children in fee, and the personal property, after expenses had been paid, one-third to the widow and two-thirds to the children; that Don

was discharged as administrator October 24, 1930; that after the estate was closed the children deeded their interest in the real estate to their mother by quitclaim deed recorded December 31, 1930; that Don, purporting to act as administrator but actually without authority, attempted to convey the entire Lewis share of the newspaper to the mother by an instrument dated August 18, 1930; that she was entitled under the decree to only one-third, but the children agreed that she was to have the benefit of the entire Lewis share of the business during her life; that Lucretia handled the business before it was turned over to the mother, and monthly accountings were had with Erickson and profits deposited in a bank account in Don's name as administrator; that Don handled the business with Lucretia's help after it was turned over to the mother, and profits therefrom were given directly to the mother or spent on her behalf during her life; that the income from the Lewis share of the business was accounted for to the date of the final decree in the administration of Silas's estate, and the income until the mother's death was turned over to her; that other personal property in Silas's estate was turned over to the mother by Don in accord with the agreement between her and the children; that Jennie died in October 1938, and plaintiff H. E. Doebler was appointed representative of her estate; that the mother died June 1, 1938, and defendant Anderson was appointed representative; that the net profits of three-fifths of one-half of the *Beacon* business was $1,323.22 from June 1, 1938, to trial; and that Don made to Silas a promissory note for $500 on April 16, 1925, which never was paid or accounted for as an asset of Silas's estate.

The court's conclusions of law were that the deed of real estate from the children to their mother was valid as written; that the purported transfer of the entire Lewis interest in the newspaper by Don as administrator to the mother was effective only as to one-third of that interest, the portion to which she was entitled by probate decree in accord with the law of descent; that the other two-thirds passed to the five children, and they are now entitled to two-thirds of the Lewis share of the *Beacon* business and other

personal property of their father and the income therefrom from June 1, 1938, to trial; that defendants Don and Edith are liable to plaintiffs for $1,323.22, profits from June 1, 1938, to trial; and that plaintiffs are entitled to recover $200 with interest at seven per cent from October 16, 1925, from Don as their share of his note. Judgment was ordered accordingly.

Defendants make 25 assignments of error in appealing to this court, which, summarized, challenge plaintiffs' right to recover: (I) Three-fifths of two-thirds of the Lewis share of the *Beacon* business and other personal property; (II) three-fifths of the profits from the Lewis share of the *Beacon* from June 1, 1938, to trial ($1,323.22); and (III) $200 as their share of Don's note to Silas. Defendants challenge the trial court's jurisdiction, seek to invoke the statute of limitations, claim necessary parties were not included, question the accounting of the trial court in determining the profits due plaintiffs, and question the sufficiency of the evidence and the findings.

## I.

Are plaintiffs entitled to three-fifths of two-thirds of the personal property? The decision below included all of the personal property left by Silas, but the findings and argument indicate that the *Beacon* business is the only substantial item involved.

■ Defendants question the sufficiency of the evidence. They claim that the personal property was given absolutely by the children to their mother, as was the realty. However, the testimony on this point was in conflict, and the trial court was fully justified in finding that the agreement between the children and the mother entitled her to the Lewis share of the *Beacon* and to other personal property and the income therefrom for life only. The court made adequate findings to support its conclusion to that effect.

■ Defendants also challenge the district court's jurisdiction. Their argument on this point is very general, failing to distinguish between I, II, and III. Defendants state in their brief:

"The matter sought to be litigated in this action as disclosed by the complaint involved matters of accounting in the estate of Silas

S. Lewis, decedent, over which the probate court had exclusive jurisdiction under our state constitution. The only court that would have jurisdiction to correct or change the accounting is the probate court."

The obvious error of such an argument in regard to the *Beacon* business is that no question of the accounting in the probate court is involved. The business was included in the inventory and two-thirds of the Lewis share decreed to the children. Title passed, and the probate court's jurisdiction ended. State ex rel. Matteson v. Probate Court, 84 Minn. 289, 87 N. W. 783. Plaintiffs and defendants Don and Edith were owners of two-thirds of the Lewis share as codistributees. After the mother's death, plaintiffs were entitled to possession of and the profits from their portion of the business, and they brought this action to compel defendants to account for and to pay over to them their share of the property. The district court had jurisdiction. Marquette Nat. Bank v. Mullin, 205 Minn. 562, 287 N. W. 233; *cf.* Hart v. Hart, 110 Minn. 478, 126 N. W. 133 (accounting between heirs in district court, though question of jurisdiction not raised); see Powell v. Pennock, 181 Mich. 588, 593, 148 N. W. 430.

■ Defendants contend that the action involved a partnership accounting and that Erickson was a necessary party. However, in our view, this suit was not an action for a partnership accounting, and did not include or require an accounting between the parties hereto and Erickson. All that was sought was plaintiffs' rightful portion of the Lewis one-half share of the *Beacon* business and profits therefrom. Consequently, Erickson was not a necessary party.

■ Defendants also claim that the plaintiffs' right to recover was barred by the statute of limitations. The mother died June 1, 1938. This action was instituted in August 1939. Plaintiffs had no right to any part of the *Beacon* business before June 1, 1938, because of the agreement by which the mother was to have the personal property and benefits therefrom for life. As plaintiffs' cause of action did not accrue until her death, the statute did not

commence to run until that date. Burns v. New Amsterdam Cas. Co. 205 Minn. 391 (see cases cited p. 392), 285 N. W. 885.

Plaintiffs were entitled "to recover and to the possession of three-fifths of two-thirds of the one-half interest in the *Beacon* business."

## II.

Are defendants Don and Edith liable to plaintiffs in the sum of $1,323.22, representing three-fifths of one-half of the profits from the *Beacon* business from June 1, 1938, to time of trial? The problems of jurisdiction, parties, and limitation of action are the same as in I.

■ In computing profits from June 1, 1938, to trial, the court used figures for the last six months of 1930. This was justifiable in view of the fact that defendants (Don at least) were actively engaged in running the business and in a position to account to their coheirs for the *Beacon* income from June 1, 1938, to trial. Failure to do so entitled the court to use figures for another period, even though it worked a hardship on defendants. *Cf.* Smith v. Tolversen, 190 Minn. 410, 252 N. W. 423 (defendant there was a trustee of two express trusts, but the duty owing was sufficiently similar to make the rule applicable).

Though not specifically discussed on appeal, we should like to point out what appears to be a discrepancy between the court's decision as to the amount of profits plaintiffs are entitled to in proportion to the business proper which they own. The court found that by decree of the probate court distributing Silas's estate, the mother got one-third of the Lewis share (one-half) of the *Beacon* business (transferred to her by Don) and the children got two-thirds. After the mother's death, the plaintiffs were entitled to three-fifths of two-thirds of the Lewis share of the business, which the court properly decided in conclusion of law XV. However, the court found in finding of fact XIX that the net profits from three-fifths of one-half of the business were $1,323.22 from June 1, 1938, on. Conclusion XIV made defendants liable to plaintiffs for that amount. Plaintiffs are entitled to only three-

fifths of two-thirds of one-half of the profits, the same proportion as their total interest in the business. One-third of one-half of the profits belongs to the mother's estate. This matter should be corrected or clarified by the lower court.

■ Defendants assign as error the lack of findings to support the trial court's conclusion that defendants Don and Edith are liable in the sum of $1,323.22. There is no finding or conclusion that can take the place of a finding that Don and Edith, or either, ever received profits from the *Beacon* business after June 1, 1938, and such failure is reversible error. The record does not permit affirmance on the theory that the omission of this finding was an oversight and that the evidence is compelling as to what it should be, Rockey v. Joslyn, 134 Minn. 468, 158 N. W. 787, for the evidence is not conclusive. To hold defendants liable for the profits, there must be a finding that they received or wrongfully diverted them. Absent such a finding, the rule stated in the syllabus of Benjamin v. Levy, 39 Minn. 11, 38 N. W. 702, applies:

"An order refusing a new trial cannot be sustained in the absence of sufficient findings of fact, even though the evidence as certified up would have fully warranted the findings."

As the case must be sent back because of insufficient findings, we need not discuss the sufficiency of the evidence. However, as defendants point out in their brief, there is no direct evidence in the record that Don and Edith received plaintiffs' share of the *Beacon* profits from June 1, 1938, on. Any such finding, based on evidence already received, must depend on inference only. Thus we feel it advisable that the trial court reopen the case to take additional evidence on this point. It would seem that the partner, Erickson, and Anderson, the administrator of the mother's estate, could clear up this matter. They were not called as witnesses.

Defendants point out that the allegations of the complaint do not include the profits from the business after June 1, 1938. To avoid possible exclusion of direct evidence, the trial court should allow plaintiffs to amend their complaint so as to cover these profits.

On this branch of the case the defective findings and lack of compelling evidence require a reversal.

### III.

Are plaintiffs entitled to $200 as their share of Don's note? Don does not question the sufficiency of the evidence or the findings in regard to the note. He does maintain that the district court has no original jurisdiction over the subject matter and that the statute of limitations has barred recovery.

Don claims that the matter of his liability on the note was exclusively within the probate court's jurisdiction. This problem is similar to the jurisdictional problem discussed under subdivision I, but requires some additional explanation. The *Beacon* business was expressly distributed by the final probate decree; the note was not. Had the final decree been general in its terms and not confined to the property listed in the inventory, title would have passed by the decree whether specified in the inventory or not, State ex rel. Matteson v. Probate Court, 84 Minn. 289, 87 N. W. 783, and the note would be in the same position in regard to jurisdiction as the newspaper. The fact that the probate court did not insert a general blanket clause in its decree does not prevent the district court, nine years after administration, from determining plaintiffs' right to this asset, since they are entitled to a portion of the note as legal heirs of the payee.

Powell v. Pennock, 181 Mich. 588, 148 N. W. 430, 431, supports our holding. There the court faced a problem similar to the one now before us. Heirs sued a coheir in chancery to account for their share of personalty alleged to have been fraudulently obtained by her from the intestate during the latter's life. Defendant demurred, claiming that the probate court had exclusive jurisdiction, but the court held that the action was properly within the chancery court's jurisdiction. The court stated (pp. 592-593):

"The main purpose of administration—to give creditors an opportunity to be heard—was thus satisfied, and, if additional assets should be discovered after the close of such administration, it would seem to be an idle proceeding to again ask for adminis-

tration simply for the purpose of distribution when all the parties in interest are of full age."

Reasons for sustaining the district court's jurisdiction in the case at bar are the same.

The two cases relied upon by Don in support of his contention that the probate court has exclusive jurisdiction are Betcher v. Betcher, 83 Minn. 215, 86 N. W. 1, and First T. & S. Bank v. U. S. F. & G. Co. 163 Minn. 168, 203 N. W. 612. Neither is authority for the proposition that the district court is precluded from compelling heirs to account to coheirs for assets in their possession discovered after administration has been closed and creditors satisfied. In both of these cases the estates had not been closed when the actions were commenced. Furthermore, the defendant in each case was an executor, or executor's bondsman, whose only interest or right to any of the property of the estate was created by his appointment by the probate court as administrator. The fact that Don was also administrator does not affect his liability as coheir or the district court's authority to compel him to account as such for the note.

■ The statute of limitations is not a bar to plaintiffs' right to recover their share of Don's note to Silas. In In re Estate of Lindmeyer, 182 Minn. 607, 235 N. W. 377, 378, this court held that indebtedness of a distributee to the decedent may be set off against his distributive share of the personal property even though the statute has run. The court, speaking through Mr. Chief Justice Wilson, said (pp. 609-610):

"Indeed the distributee cannot, in accordance with justice or good conscience, be entitled to be awarded and receive his share as long as he is a debtor to the estate and thereby has in his own hands a portion of the fund upon which the payment of his own share and the share of others depends. To permit the distributee to have such advantage would serve to diminish the fund and result perhaps to the prejudice of others. If he could receive his share and at the same time retain that portion of the fund in his

hands out of which his share ought to be paid, it would probably result in his receiving a proportionately larger amount than others equally entitled distributees."

This holding is sufficient to make clear the court's reason for refusing to apply the statute. Though Silas's estate has already been distributed in part, the reasons for or for not applying the statute are the same. The equities are even more unfavorable to Don in the instant case, as he was administrator as well as distributee.

The amount of the promissory note should have been deducted from Don's distributive share of Silas's estate, which in turn would have increased the shares of the other five heirs proportionately. We have no way of knowing whether the correct theory was used in calculating the amount plaintiffs are entitled to, but the sum adjudged owing seems to be correct.

Plaintiffs are entitled to recover from Don on the note $200 plus interest at seven per cent per annum from October 16, 1925.

Order reversed and case remanded for the sole purpose of permitting amendment of the pleadings and the taking of further evidence on the question of accounting for the Lewis share of the profits from the newspaper from June 1, 1938, to time of trial.

