JOSEPH SCHULTE v. C. H. PETERSON CONSTRUCTION COMPANY AND ANOTHER.

153 N. W. (2d) 130.

September 15, 1967—No. 40,460.

*Robb, Robb & Van Eps,* for relators.

*McLeod & Gilmore* and *McMenomy, Hertogs & Fluegel,* for respondent.

ROGOSHESKE, JUSTICE.

Certiorari to review an award of disability benefits to an employee, Joseph Schulte, by the Industrial Commission.

Schulte, employed by C. H. Peterson Construction Company, sustained an injury to his low back on April 7, 1960, while loading timbers onto a forklift. After a hearing in October 1962, a referee found that the employee was temporarily totally disabled from the date of the injury to the date of hearing, save for 1 week and 4 days of employment between June 16 and August 10, 1960. He further found that "such disability was continuing" at the date of the hearing. Allowing credit for compensation payments voluntarily made, the referee ordered the employer-insurer to pay temporary total disability benefits based on 66⅔ of his weekly earnings of $108 for a period of 129 weeks and 1 day "with compensation to be paid thereafter in accordance with the provisions of the workmen's compensation act." Even though there was medical-opinion evidence that the employee's physical condition had stabilized, no such express finding was made by or requested of the referee. As explained in a memorandum accompanying the findings, the referee treated the claim as one of continuing temporary total disability rather than one of permanent partial disability, as urged by the employer and its insurer. It was strongly recommended that the employee avail himself of vocational rehabilitative training. No appeal was taken from the referee's determination.

The insurer paid the weekly benefits ordered and 62 weeks of additional compensation, amounting to a total of 191½ weeks. In discontinuing payments on December 19, 1963, the insurer took the position that its liability ceased because the payments made represented the maximum scheduled benefits required by Minn. St. 176.101, subd. 3,

of 104 weeks' healing period plus 87½ weeks for a 25-percent permanent partial disability of the back—the highest estimate of any medical opinion submitted at the October 1962 hearing.

The second claim petition, filed in March 1965 for temporary total and permanent partial disability benefits, was heard in June 1965. The referee again found evidentiary support for temporary disability based on an inability to earn wages. Continuing compensation not to exceed 350 weeks (the maximum period provided by § 176.101, subds. 1 and 2) was awarded on the basis of findings that the employee's disability was temporary total when he was not employed and temporary partial when he was. Again, despite supporting medical and other evidence that the condition of the employee's back had stabilized from a medical or physical standpoint, no finding specifying whether there was a permanent partial disability of the back in the physical sense was made or requested.

On appeal to the Industrial Commission the referee's findings and determination were affirmed, and the employer and insurer requested this review.

The virtually undisputed testimony establishes the following facts. Schulte is about 48 years old and has a high school education. Prior to his injury he had worked as a manual laborer on construction, as a farm laborer, and as a truckdriver. Following the injury of April 1960, he underwent surgery on his back in November 1960 and had a disc removed. Between the time of his operation and the first hearing, he was not able to find any work except sporadic odd jobs, from which he earned about $50, but he was physically incapable of performing the work satisfactorily on any continuing basis. This resulted from the fact that most forms of physical exertion over a sustained period of time caused him intense pain in his back and left leg.

The nature of Schulte's back infirmity has been about the same over the last couple of years and is probably caused by the formation of scar tissue in his spine. The nature of his injury, in combination with his age and training, limits very markedly the types of jobs it is possible for him to satisfactorily perform. During the period between the first and second hearings, Schulte was employed only about 50 percent of the time despite

his good-faith efforts and unusual determination to secure and hold a job.

Between the conclusion of the first hearing in October 1962 and July 1963, Schulte was unemployed. In the spring of 1963 he sought assistance from the State Rehabilitation Department and was interviewed and tested, but was not certified for any training program. He worked at a service station from July 1963 until February 1964, when he was released because of his inability to fill the position adequately. He was, through no lack of effort on his part, unemployed from February 1964 to May 1964. He worked as a maintenance man at a Jesuit retreat house from June 1964 to November 1964, when he was again released since he could not, because of his back injury, adequately do the work. From November 1964 until March 1965, Schulte was again unemployed. In March 1965 he secured a job operating an emery wheel, cleaning sheepskins, and he was still working at it in June 1965 when the second hearing was held. However, at the time of the second hearing it was uncertain whether he would be able to continue in his position permanently. He had not worked at this job very long. His work, like his two prior jobs, tended to aggravate his back injury and intensify the pain. As a result, it was impossible for him to work steadily for a number of hours and his efficiency was less than that of a normal worker. On a substantial number of days the pain in his back was so unbearable that he could not go to work at all. He had not been fired at the time of the second hearing, but he had not been given the normally granted wage increases.

Relators argue that, because the evidence is conclusive that Schulte's back injury has stabilized and is permanent in the sense that it has been the same for the last 2 years and is never likely to improve, the commission's decision finding temporary total disability and temporary partial disability must be reversed as a matter of law because the only permissible conclusion is that he is permanently partially disabled.

There is clearly no merit to relators' contention concerning the commission's finding a temporary total disability during periods of unemployment, even though we were to accept relators' assumption that the "record establishes conclusively, as a fact, that the employee's physical

condition of low back and left leg pain and discomfort had, at or around the time of the first hearing in October of 1962, become * . * * *per-manent* rather than *temporary* in nature." It is well settled that the concept of total disability is not a mere reflection of an employee's physical condition.

Minn. St. 176.101, subd. 5, defines "total disability" as meaning, among other things, "any other injury which totally incapacitates the employee from working at an occupation which brings him an income." This court in interpreting this language has formulated the rule that a person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available. in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income.[1] A total disability is temporary when it is likely it will exist for a limited period of time only.[2] If the inability-to-earn-wages aspect of the rule is satisfied, the fact that the injury itself is permanent and partial in a physical sense will not preclude a determination that the employee has a temporary total disability. The concept of temporary total disability is primarily dependent upon the employee's ability to find and hold a job, not his physical condition.[3] The critical facts present in this case are substantially identical to those in Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. (2d) 546, where this court affirmed the commission's finding that a temporary total disability existed during the limited periods in which employee was not able to obtain employment. Accordingly, the

---

[1] See, Reese v. Preston Marketing Assn. 274 Minn. 150, 142 N. W. (2d) 721; Petter v. K. W. McKee, Inc. 270 Minn. 362, 133 N. W. (2d) 638; Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. (2d) 546; Richter v. Shoppe Plumbing & Heating Co. 257 Minn. 108, 100 N. W. (2d) 96; Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433; Green v. Schmahl, 202 Minn. 254, 278 N. W. 157.

[2] See, Lawrence v. State Industrial Comm. 120 Okla. 197, 251 P. 40; cf. Roberts v. Motor Cargo, Inc. *supra*; Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215.

[3] Castle v. City of Stillwater, 235 Minn. 502, 51 N. W. (2d) 370.

commission's finding in this case as to temporary total disability should be likewise affirmed.

The commission's award of benefits for temporary partial disability during the intermittent periods when the employee was employed at reduced wages presents a unique, complex, and markedly different problem. The difficult question which relators urge that we answer is whether a permanent partial disability of the employee's back in a physical or medical sense precludes a finding of temporary partial disability and a continuing award of disability benefits where the employee is unable to resume sustained light work and suffers a wage loss during the periods he is employed. Relators insist that the benefits must be limited to the healing period of 104 weeks, plus an award for a permanent partial disability based upon the schedule of awards. Applied to this case, if the payment of temporary partial disability benefits as provided for in § 176.101, subd. 2, is not precluded, they may continue for a period of 350 weeks. But if such is precluded and subd. 3 is controlling, the benefits would be limited to 104 weeks, the maximum healing period allowed, plus 87½ weeks, representing the scheduled benefits for a 25-percent permanent partial disability of the back. Under relators' contention, this would mean that the insurer's liability for compensation benefits ceased on December 19, 1963, except for its liability for future medical expenses and for permanent total disability benefits if the employee is unable in the future to earn any wages.

From our reading of the record, we are persuaded that the question presented is not properly before us and should not be decided at this time. Neither the commission nor the referee made an express finding as to the permanence of employee's back injury or as to the percentage of permanent partial disability. Nor is there a finding as to when the physical condition of his back reached this status, if it did. Moreover, the decision of the commission appears to treat the case as one of continuing disability causing loss of earning capacity. Relators ask us to assume upon the evidence submitted that these findings could or must have been made. We do not believe that an answer to a question of first impression upon which no significant cases have been found should be based upon assumption of fact. While it is true that the evidence seems to compel a

finding that the physical injury has stabilized, we do not agree that it conclusively established the facts we are asked to assume. Thus, the case must be remanded for additional findings.[4]

The evidence is neither conclusive nor satisfactory. None of the medical witnesses directed themselves specifically to the question of whether an operation to remove the scar tissue of the spinal column and fuse certain vertebrae would offer any substantial hope of materially improving the employee's physical disability. Dr. Meyer Z. Goldner recommended this operation be performed and stated it "would give him the best chance of obtaining relief of any other type of procedure * * * that I know of." Schulte indicated his consent to such an operation. Relators rely primarily upon opinions of various medical experts that Schulte had a "permanent partial disability." But these opinions cast little, if any, light on the critical question, for we do not know what these witnesses understood this legal concept to mean. Moreover, none of these experts except Dr. Roland F. Neumann actually discussed the possible impact of the operation recommended by Dr. Goldner. Dr. Neumann stated that in his opinion such operations were successful in only a "small percentage of cases," but did not discuss Schulte's chances in particular. Surely it is not inconceivable that the percentage of successes might be "small" and that, nonetheless, the chances of a material improvement in relator's condition might be "substantial."

The commission, pursuant to this remand, should consider whether Schulte's back injury is permanent in the sense that there is no substantial chance that it will improve in the future.[5] If such be the case, the difficult question referred to will arise. On the other hand, if improvement is reasonably likely, a temporary partial disability may be found even though the physical injury was stabilized in the sense that the

---

[4] Lewis v. Lewis, 211 Minn. 587, 2 N. W. (2d) 134. See, Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338; Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 287 N. W. 15; Nash v. Kirschoff, 161 Minn. 409, 201 N. W. 617.

[5] See, Hanna, The Law of Employee Injuries and Workmen's Compensation, pp. 244, 245.

condition of his back remained substantially unchanged over a 3-year period.[6]

Affirmed in part, reversed in part, and remanded with directions to make additional findings and to take additional evidence if deemed desirable.

[6] See, Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. (2d) 546; Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215.