**Lulabell CAVANAUGH, Relator,**

v.

**FREDERICK WILLYS, INC., et al., Respondents.**

No. CO–84–72.

Supreme Court of Minnesota.

Jan. 25, 1985.

R. Scott Bryngelson, Minneapolis, for relator.

Frederick E. Kaiser, St. Paul, for respondents.

## OPINION

TODD, Justice.

Employee seeks review of the decision of a divided Workers' Compensation Court of Appeals affirming and adopting the compensation judge's findings of fact and determination that she had failed to establish by a preponderance of the evidence that she is permanently and totally disabled. Having decided that this determination and certain findings underlying it are manifestly contrary to the evidence, we reverse and hold that employee has proved her claim.

The legal meaning of permanent total disability is well settled. We have long held that "a person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income." *Schulte v. C.H. Peterson Const. Co.,* 278 Minn. 79, 83, 153 N.W.2d 130, 133–34 (1967). Such disability is permanent if it is likely to exist for an indefinite period of time. See id. at 85, 153 N.W.2d at 135. The compensation judge clearly had this definition in mind when he found that employee's psychoneurosis, not her work injury, had substantially contributed to her disability and that she had the capacity to find work but had failed to make a reasonable effort to do so.

The record reveals that employee is an obese, 44-year-old woman with an eighth grade education, dull normal intelligence, and a dependent, possibly schizoid personality. After helping her father with farm work for several years, in 1964 she became a laborer at employer's pool table manufacturing plant. Her work involved heavy manual labor but, in spite of several health problems, she performed it faithfully until April 10, 1974, when, while bending and tugging at a 60-pound box of masonite, she developed sharp pain in her lower back. After conservative medical treatment, she returned to the same work 5 weeks later although her doctor had advised against lifting. In spite of continuing back pain, she worked until October 28, 1974, when she slipped while carrying a box of materials and fell on her back. She has not been employed since then and received temporary total disability benefits until September 2, 1982. The insurer discontinued payments on that date because it had paid more than the maximum 350 weeks of temporary total disability benefits and claimed that employee is not permanently totally disabled. She then filed a claim petition alleging that she has been so disabled since that date.

Undisputed evidence introduced at the hearing on her petition established that employee has required considerable medical attention ever since her injury. Her obesity complicates medical treatment and her efforts to lose weight have been unsuccessful. She has been treated by Dr. John Benton, a board-certified orthopedic surgeon, since November 1974 and has continued to complain of sharp pain in her lower back that sometimes radiates down her right leg to the knee and of weakness in her right leg. Since 1979 she has also complained of neck pain and headaches. She has been hospitalized several times be-

cause of these problems and testified that she continues to have them. In addition, she testified that she experiences numbness in her legs and difficulty in sleeping because of back pain. She stated that she does not dance, bowl, or sit very long at a time. In general she leads a restricted, inactive life. Dr. Benton feels that employee has degenerative disc disease in her lower back and that she sustained a lumbosacral strain and a probable disc protrusion as a result of her work injuries.[1] He also believes that employee's neck pain and headaches are causally related to her work injuries and that she has a 20 percent permanent partial disability of the back.

With respect to employee's ability to work, Dr. Benton said that orthopedically she could perform work requiring her to lift up to 15 pounds frequently or as much as 25 pounds occasionally, but that she could not climb ladders or squat. When informed of Dr. Louis Flynn's opinion that employee has a dependent, possibly schizoid personality and a psychoneurosis in which her work injury was a substantial causative factor, Dr. Benton expressed the opinion that she is permanently totally disabled.[2] On cross-examination he agreed that light work would help employee physically, but said that if the job aroused anxiety she would require more frequent medical care.

Dr. Flynn, a board-certified psychiatrist, believes that employee's chances at present of working on a sustained gainful basis are "pretty remote," and that her 1974 work injuries, as well as her psychoneurotic predisposition and an active psychoneurosis, have substantially contributed to her present symptoms and unemployability. His opinion regarding employee's present employability is based on employee's good work history prior to injury and the exist-

1. He adheres to that opinion because of her continued right leg pain and the development of irritability bilaterally on straight leg raising, although a CAT scan performed in 1981 did not furnish evidence of disc protrusion.

2. He had released employee for light work in January 1975. She did little independently to

obtain such work although she did periodically ask the employer whether it was available until the employer went out of business in 1977. Employee also cooperated fully with two rehabilitation consultants retained by the insurer at two different times in unsuccessful efforts to find her work.

ence of physical evidence to substantiate the derivation of her leg pain from her back. He feels that employee's dependent, possibly schizoid personality, poor self-concept, low average to average intelligence, and limited education also make it difficult for her to find employment in which she would be comfortable. He admits that he could not say she would be unable to work in the "right job situation," and suggests that she might participate in a sheltered workshop to determine whether she could physically and psychologically tolerate such employment.

Robert Flannery, a vocational counselor, interviewed employee and reviewed the medical records from Dr. Benton and Dr. Flynn. Employee told Mr. Flannery that she has helped her uncle pick raspberries during the summer for several years, but that she could not stand for more than half an hour or sit for more than an hour. She also told him that she does little lifting and that she has trouble climbing stairs. She complained of numbness in the toes on her right foot, low back and neck pain, and of trouble with her eyes.[3] Mr. Flannery believes there is no work employee could perform on a sustained basis for even 4 hours a day, primarily because of her physical limitations. Although he agreed that Dr. Benton's orthopedic restrictions were less severe than employee's description of her physical limitations and that persons with similar education, intelligence, and personality problems are gainfully employed, he said there is no market at present for the limited services employee could perform. He believes she has been totally disabled since 1974 and will continue to be totally disabled in the foreseeable future.

Dr. Phillip Haber, a psychologist and rehabilitation counselor who tested employee's intelligence, work capacity, and work interests for the insurer, said that her intelligence, arithmetic skills, and reading ability are sufficient for most jobs but that she has no vocational interests. On work sample testing, employee displayed competitive level accuracy or better in some clerical tests and competitive level rate in using hand tools for bench assembly work. Her performance rates in most tests, however, range from far below to below competitive levels. In addition, she has visual problems and experiences difficulty in spelling and in following complex instructions. Dr. Haber also observed that she had back discomfort and pain during some of the testing, but concluded that she could perform several jobs including assembly-type work, packaging, operating a cutting or a heat seal machine, and light warehouse work. On Dr. Haber's referral, a psychologist evaluated employee and concluded that she is depressed, anxious, neurotic, and excessively preoccupied with her physical problems, but that she is not schizoid. Dr. Haber believes that employee's psychological makeup and condition do not prevent her from working, that she is capable of sustained gainful employment at the described jobs and others and that with "some help and some motivation" she could work again. He conceded that he did not know whether any of the jobs he suggested were available either in her community of Lakeville or in the metropolitan area.

The insurer also had employee placed under surveillance on two different days in July 1982. A 15-minute film taken by the surveillor during the 2 hours he observed employee was introduced into evidence and he testified that the film represented what she did during his observation periods. The compensation judge found that the film showed employee to be capable of bending forward 80 to 90 degrees, bending and turning her head easily, twisting her body to the right, and reaching down to her upper thigh while picking berries and leaning forward.

Although the majority of the Court of Appeals felt that substantial evidence had been presented on both sides of the basic issue, we cannot agree. In our view, two

---

**3.** Employee has blurring of vision in one eye, not related to her work injuries, and has been advised by a doctor not to drive.

crucial findings of the compensation judge are manifestly contrary to the evidence and those inferences which could be reasonably drawn from it. It is true that the finding that employee's work injuries did not contribute substantially to her present disability has apparent support in the opinions of Dr. Benton and Dr. Flynn that orthopedically employee is capable of work subject to her physical limitations, in the film showing employee picking berries, and in Dr. Haber's opinion that she is physically and psychologically capable of gainful employment.

■ The evidence on the whole, however, clearly reveals that Dr. Benton and Dr. Flynn believe there is little likelihood of employee being able to obtain and remain in gainful employment. While Dr. Flynn may have felt that employee's psychoneurosis was the most important cause of her disability, he clearly considered her back injury to be a substantial contributing factor, as did Dr. Benton. The testimony of these witnesses, considered as a whole, lends no support to the finding that employee's work injuries did not contribute to her disability. Instead, it provides substantial support for a contrary finding. Nor does the 15-minute film of employee picking berries, at her own pace and in a noncompetitive environment, furnish evidence from which reasonable minds would infer that she is physically capable of sustained gainful employment. Finally, though Dr. Haber believes that employee's physical and psychological disabilities do not prevent her from being employed, we cannot accept his opinion as a sufficient basis for a finding that she is employable and not presently totally disabled in light of the fact that he could not say that any of the jobs he thought she could perform is available in her community or in the metropolitan area. As in *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984), little evidence was furnished to show how employee could translate a theoretical capacity for work into an actual job. We conclude that the evidence of the prior unsuccessful efforts by two rehabilitation specialists to locate suitable employment, employee's testimony about her physical limitations, Mr. Flannery's testimony that there is no job at present which she can perform on a sustained basis, and Dr. Haber's testimony that employee exhibited pain behaviors and would need "some help and some motivation" to work again, so far outweigh his opinion that she is presently employable that reasonable minds could not infer from Dr. Haber's opinion that employee's work injuries do not now contribute substantially to her present disability. Thus, the finding that they do not do so is manifestly contrary to the evidence.

With respect to the further finding that employee is capable of securing work, but has not made a diligent effort to do so, there is *no* evidence supporting a determination that she is capable of finding work without assistance, and substantial evidence to the contrary.

We conclude that both findings and the consequent determination that employee did not prove her claim of permanent total disability by a preponderance of the evidence must be reversed as manifestly contrary to the evidence. We remand for an entry of findings and an award consistent with this opinion.

Employee is awarded attorney fees of $400.

Reversed.

COYNE, Justice (dissenting).

I respectfully dissent. Based on the conclusion that the findings were supported by substantial evidence, the Workers' Compensation Court of Appeals, by a majority decision, affirmed the compensation judge's determination that the employee had failed to prove by a reasonable preponderance of the evidence that she is permanently and totally disabled. The medical testimony was conflicting, as was the testimony of vocational counselors. The employee's treating physician was of the opinion that she had sustained a 20 percent permanent partial disability of the back, and he said that orthopedically she was capable of light work within restrictions. A psychiatrist, a

psychologist and rehabilitation counselor, and a vocational counselor differed about her capability for sustained gainful employment. The film of employee's berry picking showed employee engaged in activities consistent with the restrictions imposed by her physician and far exceeding her description of her physical ability.

That we might well have reached a different conclusion had we been triers of fact is irrelevant. An experienced compensation judge determined that the employee was not permanently and totally disabled and that she was capable of working but had not diligently sought work within her capabilities. The Workers' Compensation Court of Appeals affirmed that determination. We have said that this court must view the facts in the light most favorable to the findings and will disturb them only if they are manifestly contrary to the evidence or that it is clear reasonable minds would adopt a contrary conclusion. *E.g.,* *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54 (Minn.1984). It seems to me that on the record before us reasonable minds could come to different conclusions and that, therefore, we should not substitute our findings for those of the compensation judge and the Workers' Compensation Court of Appeals.

I would affirm.

AMDAHL, Chief Justice (dissenting).

I join in the dissent of Justice Coyne.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Coyne.