Bobby R. HARRISON, Relator,

v.

CLEANING CONCEPTS, INC. and CNA
Insurance Company, Respondents.

No. C1–94–910.

Supreme Court of Minnesota.

Dec. 23, 1994.

William M. Fishman, Borkon, Ramstead,
Mariani & Letourneau, Ltd., Minneapolis, for
relator.

Lauris A. Heyerdahl, Austin & Abrams,
P.A., Minneapolis, for respondents.

## OPINION

TOMLJANOVICH, Justice.

The Workers' Compensation Court of Appeals reversed, by panel majority, the compensation judge's findings as to the date of permanent total disability and extent of permanency. We reverse and reinstate the findings of the compensation judge.

In June 1984, Bobby Harrison sustained a low back injury in Texas while working as a heavy equipment operator for Phillips Construction Company. As a result of the injury, on May 24, 1985, employee underwent lumbar decompression and two-level intertransverse fusion surgery. After a period of recovery and an authorization to return to work with restrictions, employee found work in a variety of jobs. In June 1990, employee began working as a janitor for Cleaning Concepts, Inc., a job involving vacuuming floors, cleaning bathrooms, emptying garbage, and replacing jugs of bottled water in water coolers in office buildings. On August 16, 1990, he reinjured his low back when he tripped and fell at work while carrying a vacuum cleaner down a flight of stairs. Following a brief period of total disability, employee continued working until October 10, 1990, when

his right leg buckled at work, causing him to fall.

Employee was eventually referred to Dr. James W. Ogilvie who diagnosed a failed fusion and right foot drop. On May 14, 1991, employee underwent decompression and fusion surgery to alleviate the foot drop and repair the pseudoarthrosis. Although there was some improvement in the employee's level of back pain following surgery, his foot drop did not improve. At the July 10, 1991, followup examination, Dr. Ogilvie noted, "For the past 2–3 weeks [employee] has had increasing symptoms in his L5 dermatome. There has been no change in his weakness, but he is having considerable esthesias along that distribution." Dr. Ogilvie's plan was to "fit [employee] with an AFO [leg brace], which he has never used in the past."

Meanwhile, employee was assigned a qualified rehabilitation consultant (QRC) who monitored his progress following surgery for purposes of developing a rehabilitation plan that would return him to work for Cleaning Concepts or some other form of employment. In early fall 1991, although Dr. Ogilvie thought it was "too early" for a job search, employee and his QRC explored alternative forms of employment such as musical instrument repair or light woodworking.

On November 6, 1991, employee, accompanied by his QRC, returned to Dr. Ogilvie for his 6–month post-operative examination. Dr. Ogilvie noted that employee's fusion appeared to be healing well, that his foot drop was unchanged, and that he had developed a tremor in his hands. Apparently at that point the doctor and QRC felt it unlikely employee would be able to return to the competitive job market and discussed the possibility of social security disability benefits. Dr. Ogilvie also referred employee to Dr. Steven Noran for evaluation of the hand tremors. Dr. Noran felt employee had an "intention tremor" which improved with medication. Dr. Noran's records reflect that in March 1992, although reemployment was still under discussion, he did not think it likely employee would be able to "get back into the competitive job market." In April 1992, employee applied for social security disability benefits.[1]

Employee sought permanent total and permanent partial disability benefits. The dispute in this case was not whether employee was entitled to the benefits, but rather, the date on which employee would be declared permanently totally disabled and the method of rating the disability attributable to the August 1990 injury. Relevant evidence pertaining to permanent total disability included the deposition testimony of Dr. Ogilvie and Dr. Noran who believed it appropriate in this case to place the time of permanent total disability status at 6 months after surgery, when no further improvement was anticipated. On cross-examination, Dr. Ogilvie agreed that "using 20/20 hindsight" it was "probably true" that employee was permanently totally disabled from the time of his injury; and Dr. Noran agreed that employee had not been capable of gainful employment since then. Employee's QRC said she did not consider employee disabled, on a permanent basis, until March 1992.

With respect to the impairment rating, Dr. Ogilvie assigned a 22.5% rating for the two-level fusion surgery caused by the 1984 injury. Minn.Rule 5223.0070, subp. 1.D. Dr. Ogilvie said the disability schedules did not provide ratings for surgical repair of a failed fusion. The doctor also assigned a 13% rating relating to the foot drop that resulted from the L–5 nerve root dysfunction resulting from the 1990 injury. Minn.R. 5223.0160, subp. 1.P.

The compensation judge found employee permanently totally disabled as of November 6, 1991, and rated the impairment resulting from the 1990 injury at 13%. On appeal, the WCCA reversed by panel majority, concluding employee was permanently totally dis-

1. In December 1992, employee was determined eligible to receive social security disability benefits retroactive to March 1991. When an individual receives social security disability benefits and workers' compensation benefits, the social security disability benefits are reduced to the point at which the combined social security and periodic workers' compensation benefits do not exceed 80% of the individual's average current earnings. 42 U.S.C. § 424A; 20 C.F.R. § 404.408(b). However, Minnesota has an offset provision for social security benefits after $25,000 in permanent total disability benefits have been paid. Minn.Stat. § 176.101, subd. 4.

abled as of October 10, 1990. The WCCA also reduced the permanent partial disability rating from 13% to 10.075% by use of the multiple injury formula.

■ Employee argues the compensation judge's finding as to permanent total disability had substantial evidentiary support. A "person is totally disabled if his physical condition, in combination with his age, training, and experience and the type of work available in his community, causes him to secure anything more than sporadic employment resulting in an insubstantial income." *Cavanaugh v. Frederick Willys, Inc.*, 361 N.W.2d 49, 50 (Minn.1985) (quoting *Schulte v. C.H. Peterson Const. Co.*, 278 Minn. 79, 83, 153 N.W.2d 130, 133–34 (1967)). Such disability is permanent if it is likely to exist for an indefinite period of time. *Id.* In this case, as the WCCA dissenting panel member concluded, where evidence that continued medical and rehabilitation efforts throughout most of 1991 were directed at returning employee to work, the compensation judge's determination that employee was not permanently totally disabled before November 6, 1991 is not unreasonable. *See, e.g., Brandl v. Smith Transfer Corp.*, 42 Workers' Comp. Dec. 193 (WCCA 1989), *aff'd without opinion*, 445 N.W.2d 562 (Minn.1989); *Thomas v. Oscar J. Boldt Constr.*, 41 Workers' Comp. Dec. 441 (WCCA 1988), *aff'd without opinion*, 430 N.W.2d 840 (Minn.1988).

■ The employee also challenges the use of the multiple injury formula to reduce his award of permanent partial disability compensation. Minn.Stat. § 176.105, subd. 4(c) (1990) provides, in part:

If an employee *suffers a permanent functional disability of more than one body part due to a personal injury incurred in a single occurrence,* the percent of the whole body which is permanently partially disabled shall be determined by the following formula so as to ensure that the per-

centage for all functional disability combined does not exceed the total for the whole body:

$$A + B (1-A)$$

where: A is the greater percentage whole body loss of the first body part; and B is the lesser percentage whole body loss otherwise payable for the second body part. $A + B (1-A)$ is equivalent to $A + B - AB$.

For permanent partial disabilities to three body parts due to a single occurrence or as the result of an occupational disease, the above formula shall be applied, providing that A equals the result obtained from application of the formula to the first two body parts and B equals the percentage for the third body part * * *.

(Emphasis added). The corresponding provision in the permanent partial disability schedules provides: "where an impairment *must be rated under more than one category,* the ratings must be combined using the A + B (1–A) formula" of section 176.105, subd. 4(c). Minn. Rules 5223.0010, subp. 2 (emphasis added).

The compensation judge found that employee had sustained a 22.5% impairment as a result of the fusion surgery caused by the 1984 injury and a 13% impairment relating to the footdrop from the 1990 injury. She further found that where, under the disability schedules, employee was not allowed an additional rating for the repeat fusion surgery occasioned by the 1990 injury, the multiple injury formula did not apply; and she awarded compensation for the 13% impairment resulting from the 1990 injury alone.[2]

The WCCA, however, read Minn.Rule 5223.0315, [subp.] D [3] as requiring application of the multiple injury formula, and rated the whole body impairment at 32.575%. The WCCA then reduced that rating by the 22.5% attributed to the preexisting condition to arrive at a 10.075% rating. The dissenting

2. Minn.Stat. § 176.101, subd. 4a (1990) provides that compensation payable for a permanent partial disability is to be reduced by the proportion of the disability attributable to a preexisting disability.

3. Minn.Rule 5223.0315, [subp.] D states:
    If Minnesota Statutes, sections 176.101, subdivision 4a, and 176.105, subdivision 4, para-

graph (c) apply, apportionment must be determined according to subitems (1) and (2).
(1) For each impairing condition, determine the percentage of whole body disability under items A to C, as appropriate.
(2) Combine the percentages obtained in subitem (1) as described in part 5223.0300, subpart 3, item E [multiple injury formula]. Before the next application of the formula, the

 

panel member believed this result was contrary to the unappealed finding that the 1990 injury resulted in but one disability rating. We agree.

The multiple injury rule applies to those situations in which it is necessary to cumulate ratings for impairment resulting from a single occurrence. *E.g., Deschampe v. Arrowhead Tree Service*, 428 N.W.2d 795 (Minn.1988). Where there is no cumulation of ratings for the 1990 injury, section 176.105, subd. 4(c) has no application. Consequently, where section 176.105, subd. 4(c) does not apply, neither does Rule 5223.0315, [subp.] D.

We therefore reverse the decision of the Workers' Compensation Court of Appeals and reinstate the compensation judge's findings and award based thereon.

Reversed and reinstated.

Employee is awarded $400 in attorney fees.

STRINGER, J., took no part in the consideration or decision of this case.

---

result of an application of the formula must be stated as a decimal, not as a percentage, that is rounded up or down to four decimal places.