**James BEHRENS, Relator (C4–95–510), Respondent (CX–95–530),**

**v.**

**CITY OF FAIRMONT and American States Insurance Co., f/k/a Western Insurance Co., Respondents (C4–95–510), Relators (CX–95–530),**

**and**

**City of Fairmont, Self–Insured/Berkley Administrator, Respondent.**

**Nos. C4–95–510, CX–95–530.**

Supreme Court of Minnesota.

July 14, 1995.

Rehearing Denied July 27, 1995.

David A. Stofferahn, Sieben, Gross, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for James Behrens, relator (C4–95–510), respondent (CX–95–530).

Christie Doll Ahern, Minneapolis, for American States Ins., respondent (C4–95–510), relator (CX–95–530).

Dianne E. Walsh, Fitch, Johnson, Larson, Walsh & Held, P.A., Minneapolis, for City of Fairmont, et al., respondents (C4–95–510), relators (CX–95–530).

Roderick C. Cosgriff, Sheryl A. Zaworski, Gilmore, Aafedt, et al., Minneapolis, for Berkley Adm'r, respondent.

## OPINION

KEITH, Chief Justice.

The Workers' Compensation Court of Appeals, by majority decision, referred a petition to vacate an award of permanent total benefits for hearing on whether an adjudicated permanently totally disabled worker had subsequently retired from the labor market for purposes of discontinuing the payment of permanent total benefits. We reverse.

James H. Behrens sustained compensable low back injuries in 1973 and 1988 while employed by the City of Fairmont. On January 19, 1989, at age 60, Behrens stopped working because of his work injuries, and he subsequently sought permanent total compensation. When the matter came on for hearing in April 1992, the parties stipulated that Behrens had been permanently totally disabled as of January 19, 1989, that more than $25,000 in weekly compensation had been paid as contemplated by Minn.Stat. § 176.101, subd. 4, and that Behrens' permanent total compensation was subject to the statutory offset for government benefits.

During the course of the hearing, in response to questioning by counsel for the city, Behrens indicated that prior to his 1988 injury, he had intended to work until age 65 and then retire from the labor market. In his findings and order of August 31, 1992, the compensation judge incorporated the parties' agreement as to permanent total disability.

On April 1, 1993, the city filed a notice of intention to discontinue benefits as of April 26, 1993, Behrens' 65th birthday, contending that benefits ceased based on Behrens' previously-expressed intention to retire as of that date as well as his entitlement to social security old-age benefits. The matter proceeded to hearing before the same compensation judge before whom the 1992 claim had been litigated. After reviewing the records from the prior proceeding and considering the arguments of the parties, the compensation judge dismissed the matter, concluding that because Behrens had been declared permanently totally disabled in the 1992 proceeding and no petition to vacate the earlier order had been filed, principles of *res judicata* precluded relitigating the issue and that the city's remedy was to request reopening for modification of the prior declaration of permanent total disability pursuant to Minn. Stat. § 176.461.

The city filed an appeal with the WCCA and also filed a petition to vacate the compensation judge's earlier decision incorporating the permanent total disability stipulation. The WCCA judges unanimously agreed that the procedures for discontinuing benefits did not apply given that Behrens had been formally declared permanently totally disabled in the prior proceeding,[1] but they divided on the remaining issues. Three judges concluded that an award of permanent total compensation could be vacated, pursuant to section 176.461, on grounds the employee had subsequently retired from the labor market, and they remanded the matter for an evidentiary hearing on the issue of retirement. *Behrens v. City of Fairmont,* —— Workers' Comp. Dec. —— (WCCA, filed Feb. 7, 1995) (slip op. at 3–8). The fourth judge believed the statutory scheme contemplated that permanently totally disabled employees who reach

1. Minn.Stat. §§ 176.238, subd. 11, 176.239, subd. 10.

the age of retirement remain eligible for permanent total disability benefits, *id.* at 11–13, and the fifth judge believed there were no grounds for vacating the award under section 176.461. *Id.* at 8–11.

■ Temporary total benefits are weekly wage loss benefits payable to an injured worker who is "totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income." *Cavanaugh v. Frederick Willys, Inc.*, 361 N.W.2d 49, 50 (1985) (quoting *Schulte v. C.H. Peterson Const. Co.*, 278 Minn. 79, 83, 153 N.W.2d 130, 133–34 (1967)). Permanent total benefits are payable when such disability is likely to exist for an indefinite period of time. *Id.* Temporary total benefits may be discontinued upon determination that the employee is no longer totally disabled or that a period of unemployment is not causally related to the compensable disability, such as by a voluntary withdrawal, or retirement, from the labor market for non-disability reasons;[2] and a voluntary withdrawal or retirement from the labor market, which is not the involuntary result of the compensable disability, may also preclude a finding of permanent total disability.[3] When benefits are payable under a permanent total determination, however, such benefits are payable for an indefinite period of time into the future unless and until such time as the case may be reopened upon sufficient cause under section 176.461. *Petter v. K.W.*

*McKee, Inc.*, 270 Minn. 362, 373, 133 N.W.2d 638, 645 (1965).

At one time, there was a durational limit on temporary total benefits and a monetary limit on permanent total benefits. *See* Minn. Stat. § 176.11, subds. 1 and 4 (1949). In 1953, however, section 176.11, subd. 4 was repealed and replaced by Minn.Stat. § 176.101, subd. 4, which essentially eliminated the monetary cap on permanent total disability benefits and also made the payment of those benefits subject to a government benefits offset. 1953 Minn.Laws ch. 755, §§ 10, 83. In 1975, the durational cap on temporary total benefits was eliminated. 1975 Minn.Laws ch. 359, §§ 8, 23.

■ In 1983, in response to detailed studies identifying the open-ended availability of temporary total disability benefits and the adversary nature of ascertaining the extent of permanency as major problems in the system, the legislature enacted sweeping changes that restructured the delivery of permanent partial benefits and set durational limits on temporary total benefits, with special provision made for the discontinuance of temporary total benefits on retirement.[4] This legislation was not, however, directed at the permanently totally disabled worker whose weekly permanent total benefits have commonly been understood as unchanged by the 1983 reform.[5] Inasmuch as subsequent efforts to end permanent total benefits "at retirement" have been unsuccessful, *see, e.g.,* S.F. 596, art. 1, § 9 and S.F. 1073, art. 1,

---

**2.** *E.g., Nibbe v. City of St. Paul,* 320 N.W.2d 92 (Minn.1982); *Prekker v. Mastermotive, Inc.,* 314 N.W.2d 841 (Minn.1982); *Gaston v. North Star Lanes,* 295 N.W.2d 623 (Minn.1980); *Henry v. Sears, Roebuck & Co.,* 286 N.W.2d 720 (Minn. 1979); *Saenger v. Liberty Carton Co.,* 281 N.W.2d 693 (Minn.1979) and 316 N.W.2d 737 (Minn. 1982); and *Joens v. Campbell Soup Co.,* 281 N.W.2d 695 (Minn.1979).

**3.** *E.g., Grunst v. Immanuel–St. Joseph Hosp.,* 424 N.W.2d 66 (Minn.1988); *Schroeder v. Highway Serv.,* 403 N.W.2d 237 (Minn.1987); *Smith v. Armour & Co.,* 316 N.W.2d 925 (Minn.1982); and *Findorff v. Pinkerton's Inc.,* 295 N.W.2d 373 (Minn.1980).

**4.** *Parson v. Holman Erection Co., Inc.,* 428 N.W.2d 72, 74–75 (Minn.1988); 1983 Minn.Laws

ch. 290, §§ 44–64, 68, *codified at* Minn.Stat. § 176.101, subds. 3e–3u, 8 (1984).

**5.** *See* Lisa Thornquist & David Bogenschultz, "Income Replacement in Minnesota Workers' Compensation System," *in* Minn. Dep't of Labor and Indus., *Report to the Legislature on Workers' Compensation in Minnesota, Background Research Studies,* at iv (Jan. 1988); *Workers' Compensation Practice in Minnesota* at 64, 248 (Minn. CLE Feb. 1994); Leslie Altman, Jay Benanav, Steve Keefe & Joan Volz, *Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments,* 13 Wm. Mitchell L.Rev. 843, 887–88 (1987); *see also* 4 Arthur Larson, *The Law of Workmen's Compensation* App. B–8–5 (1994).

§ 11, 77th Minn.Leg.1991, we think it reasonably clear that under the law in effect on the date of injury in this case, although permanent total benefits may be reduced by the federal social security disability benefits paid after the $25,000 threshold is met, permanent total benefits do not cease altogether when the social security benefits are converted to old age benefits or when the employee attains the age at which he had hoped to retire had he not been injured.[6]

Reversed.

---

6. As we have said before, "[i]t is for the legislature, not the [c]ourt, to judge the social utility of this statutory system, which has no common law counterpart, to balance the interests of employees and employers, and to make whatever adjustments and corrections it deems appropriate," *Parson*, 428 N.W.2d at 76; and recently, the legislature enacted some changes to subdivision 4 of section 176.101, with consequences yet to unfold, to put a durational limit on permanent total benefits for workers injured after October 1, 1995. 1995 Minn.Laws, ch. 231, art. 1, §§ 21, 37.